[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-14791

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Aug. 28, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-00293-CV-CAR-5

WILLIE B. TURNER,

Plaintiff-Appellant,

versus

HALE EDWARD BURNSIDE,
CALVIN RAMSEY,
OTIS RIGHT,
ROGER HINKLE,
JOHN DOE, I, et al.,

Defendants-Appellees,

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(August 28, 2008)**

Before CARNES and MARCUS, Circuit Judges, and BUCKLEW,* District Judge.

CARNES, Circuit Judge:

_____

*  Honorable Susan C. Bucklew, United States District Judge for the Middle District of
Florida, sitting by designation.

Willie Turner, an inmate at the Men's State Prison in Hardwick, Georgia, filed a 42 U.S.C. § 1983 lawsuit against various officials and employees of the Georgia Department of Corrections who worked at the prison. His lawsuit claimed that he had been subjected to cruel and unusual punishment as a result of an incident in which he was deliberately exposed to electrical shock. After the district court dismissed Turner's complaint for failure to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a), he filed this appeal.

## I.

Turner's claims are based on allegations about what happened to him on August 24, 2004, while he was on a work detail in the prison kitchen. According to his complaint, a prison employee supervising inmates forced Turner to clean an oven even after Turner had protested that it was not safe to do so because the oven was sparking electricity and the floor was wet. When he touched the oven, Turner received an electrical shock that knocked him to the ground and permanently damaged his leg. Instead of turning off the power or sympathizing with Turner, the supervisor joked about what had happened, called Turner stupid, and filed a disciplinary report against him. Turner alleges that the supervisor later told him that exposing Turner to the risk of electrical shock was his way of getting back at

2

him for being too fat.  After he was shocked, a prison guard took Turner to the prison's infirmary where he contends that he received deliberately indifferent medical care.

The grievance procedures in effect at the Men's State Prison in Hardwick are those contained in the Georgia Department of Corrections' Standard Operating Procedure IIB05-0001.  (Our description of that SOP is of the version that existed at the time these facts arose.)  The first step requires the inmate to file a written informal grievance with his grievance counselor within ten days of the date that the inmate "discovered or reasonably should have discovered the incident giving rise to the complaint."  Turner did that.  On August 30, 2004, six days after being shocked, Turner gave his grievance counselor an informal grievance form complaining that he had been shocked and had received inadequate medical treatment afterwards.

When an inmate's informal grievance alleges physical abuse or excessive force, as Turner's did, the SOP requires the inmate's counselor to forward it to the grievance coordinator within two business days of receipt.  The grievance coordinator must then "ensure that the inmate is promptly issued a [formal] grievance form" and must forward a copy of the informal grievance to the Internal Investigations Unit of the Office of Professional Standards.  From the allegations

3

in Turner's complaint, which we must accept as true at this stage, it appears that either the grievance counselor or the coordinator may have failed to act as required. On September 7, 2004 Turner's counselor told him that she did not know where his informal grievance was but that she would give him a formal grievance form before his time to file ran out. There is some ambiguity in the SOP about the deadline for filing a formal grievance under certain circumstances, but none of that ambiguity affects the outcome here. Under any interpretation of the SOP, Turner met the deadline by filing a formal grievance on the same day the grievance counselor gave him the form.

According to the SOP, after an inmate submits a formal grievance, the warden, superintendent, or someone else designated to resolve the inmate's complaint must review the grievance and "provide a written response stating the reason(s) for the decision reached." The grievance coordinator then gives to the inmate the response to the formal grievance along with the original grievance form that the inmate submitted. All of this must be done within thirty days of the date that the inmate submits his formal grievance, unless the grievance coordinator authorizes a one-time, ten-day extension to allow for a more complete investigation of the allegations in the grievance. If the warden, superintendent, or designee denies the grievance or fails to respond in writing to it within thirty (or

4

forty, if extended) days after receipt, the SOP provides that the inmate may appeal to the Office of the Commissioner within five days of receiving a response or of the expiration of the allotted time for one. Upon notice that the inmate wishes to appeal the response or lack of one, the counselor or grievance coordinator must provide the inmate with an appeal form for this purpose.

It is from that stage of the procedures the issue arises. The allegations are that on September 9, 2004, two days after Turner submitted his formal grievance, Warden Tydus Meadows called him "to security." When Turner arrived, Meadows was holding the formal grievance form Turner had submitted, and said, "Oh—you're the one that got shocked!" The warden told him, according to Turner: "that if I didn't like the way they did things around here he would put my ass in the van with inmate Johnson and transfer me so far south that I would never be able to see my family again till I got out of the Georgia Prison System." Meadows then tore up Turner's complaint in front of him and said that he "had better not hear of another grievance or lawsuit pertaining to [Turner] getting shocked."

## II.

In the district court the defendants raised the exhaustion of administrative remedies defense in their motion to dismiss. Attached to the motion was an

5

affidavit from the secretary of the Men's State Prison laying out the grievance process and stating that she could not find in Turner's file any formal grievance relating to the subject matter of this lawsuit. Turner responded that the reason she could not find his formal grievance is that Warden Meadows had ripped it up. He contended that he had properly exhausted his remedies to the extent that he could. Turner also contended, because the defendants' motion to dismiss relied on information outside the pleadings, it was really a motion for summary judgment. On that basis he submitted three affidavits in which he swore to the exhaustion facts that we have recounted.

The magistrate judge recommended that Turner's complaint be dismissed without prejudice for failure to exhaust all of his administrative remedies, as required by the PLRA. Accepting as true Turner's allegation that the warden had torn up his formal grievance, the magistrate judge concluded that in order to exhaust his administrative remedies Turner should have: "(1) filed an additional grievance (formal or informal); (2) sought an appeal of the warden's destroying his grievance, which could be construed as a denial of the grievance; or (3) sought leave to file an additional and/or out-of-time grievance." Turner objected to the recommendation, contending that the warden's threat to ship him far away from his family had rendered his administrative remedies unavailable. Turner asserted

6

his position that the defendants' motion should be considered as one for summary judgment.

The district court overruled Turner's objections and adopted the magistrate's recommendation. In doing so, the court expressed its belief that threats alone cannot make administrative remedies unavailable and, even if they could, Turner should have taken the three actions identified by the magistrate judge.

## III.

Turner first contends that the district court made improper findings of fact by looking beyond the complaint to consider facts alleged in the affidavits submitted by both parties. The defendants argue that the district court did not make any findings of fact in dismissing Turner's suit, and even if it did so, that is permitted.

This Court has recently decided this issue. We held that a defense of failure to properly exhaust available administrative remedies under the PLRA should be treated as a matter in abatement. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). This means that procedurally the defense is treated "like a defense for lack of jurisdiction," although it is not a jurisdictional matter. Id. As a result, deciding a motion to dismiss for failure to exhaust administrative remedies is a two-step

7

process.  Cf. Lawrence v. Dunbar, 919 F.2d 1525, 1528–29 (11th Cir. 1990) (describing the "two forms" of attacks—facial and factual—on subject matter jurisdiction).

First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true.  If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.  See Bryant, 530 F.3d at 1373–74 (concluding that there was a genuine issue of material fact about the availability of administrative remedies before addressing the propriety of the district court acting as a factfinder to resolve the issue); cf. Lawrence, 919 F.2d at 1529 ("Facial attacks on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." (citation, alterations, and quotation marks omitted)).  This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).

If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to

exhaustion. Bryant, 530 F.3d at 1373–74, 1376; cf. Lawrence, 919 F.2d at 1529. The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies. See Jones v. Bock, 549 U.S. 199, ___, 127 S. Ct. 910, 921 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); Dixon v. United States, 548 U.S. 1, 8, 126 S. Ct. 2437, 2443 (2006) (stating that, as a "general evidentiary rule," the burdens of production and persuasion are given to the same party); Roberts v. Barreras, 484 F.3d 1236, 1240 (10th Cir. 2007) ("Jones does not spell out the proper burden of proof to use in evaluating exhaustion claims, but circuits that treated exhaustion as an affirmative defense prior to Jones have all put the burden of proof on defendants, to the extent that they addressed the issue."); id. (citing cases). Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies.

In this case the district court did not make any findings of fact, improper or otherwise. Instead, it assumed that every factual allegation about exhaustion that was contained in Turner's three affidavits was true. That is what we later held in Bryant that a court is to do at the first step. Bryant, 530 F.3d at 1371, 1372; cf.

9

Fed. R. Civ. P. 12(d) ("If, on a motion under Rule . . . 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). Because the district court concluded at the first step that even taking Turner's version of the facts as true he had not exhausted his administrative remedies, the court never reached the second step of resolving the factual disputes between the parties about exhaustion. There was no violation of the Bryant procedures here.

**IV.**

Turner next contends that taking his allegations as true the district court erred in deciding that he had not exhausted his administrative remedies. The defendants take the position that Turner failed to exhaust his administrative remedies because he failed to: (1) file an additional grievance; (2) seek leave to file an out-of-time grievance; (3) file an emergency grievance; or (4) appeal the implicit denial of his formal grievance.

We reject the defendants' arguments that Turner was required to file an additional grievance or to seek leave to file an out-of-time grievance. Turner alleges that he properly filed his formal grievance but Warden Meadows tore it up. Nothing in SOP IIB05-0001, the applicable prison regulation, requires an inmate to grieve a breakdown in the grievance process. Nor does anything in the SOP

10

require an inmate to seek leave to resubmit the same grievance to the same official who destroyed the grievance when it was properly filed as a matter of right. The PLRA requires that inmates exhaust their available administrative remedies. 42 U.S.C. § 1997e(a). It does not require inmates to craft new procedures when prison officials demonstrate—and here we could use that word literally—that they will refuse to abide by the established ones. Cf. Dole v. Chandler, 438 F.3d 804, 811 (7th Cir. 2006) ("[P]rison authorities may not employ their own mistake to shield them from possible liability, relying upon the likelihood that a prisoner will not know what to do when a timely appeal is never received.").

The defendants' third argument, that Turner should have filed an emergency grievance, is also without merit. The SOP does contain an emergency grievance procedure that can be used for "unexpected situation[s] that require[] prompt action to avoid irreparable harm to the inmate," but it also specifically contemplates that allegations of physical abuse or excessive force may be made through the non-emergency grievance procedures. In any event, Turner's allegations would not justify filing an emergency grievance. At the time he filed his informal grievance Turner had already allegedly been shocked and denied adequate medical care, and there is nothing in his allegations to indicate that at that time his grievance "require[d] prompt action to avoid irreparable harm."

11

More fundamentally, nothing in the SOP requires inmates to use the emergency grievance procedure when grieving an emergency. Turner's failure to comply with an optional administrative procedure does not amount to a failure to properly exhaust his remedies. Cf. Darby v. Cisneros, 509 U.S. 137, 147, 113 S. Ct. 2539, 2545 (1993) (interpreting the exhaustion requirement of the Administrative Procedure Act to allow judicial review when litigants have exhausted all mandatory administrative appeals but have not exhausted optional ones).

Finally, the defendants argue that Turner failed to properly exhaust his administrative remedies because he did not appeal Warden Meadows' implicit—albeit emphatic—denial of his formal grievance. In arguing that filing an informal grievance is enough, Turner cites the portion of the SOP that exempts inmates alleging excessive force or physical abuse from waiting for a response to their informal grievances before filing formal ones. However, an exemption from one specific requirement is not a license to disregard others. We are not considering whether a formal grievance was filed too soon, but instead a situation in which the denial of a formal grievance was never appealed. The SOP does require inmates to appeal within five days after they have received either an unfavorable written response to their formal grievance or no written response at all within the time provided for one.

Turner never received a written response to his formal grievance. Once the thirty-day time limit for a response had passed, he was required to appeal within five calendar days. He admits that he failed to file an appeal. As a result, if the appeal remedy was available to Turner, he should have pursued it and his failure to do so would bar his lawsuit under the PLRA's exhaustion requirement.

Turner contends that the appeal remedy was not "available" to him because of Warden Meadows' threat to "put [Turner's] ass in a van . . . and transfer [him] so far south that [he] would never be able to see [his] family again till [he] got out of the Georgia [p]rison [s]ystem." Holding otherwise, Turner argues, would deprive him of his constitutional right of access to the courts.

The defendants respond by contending that, even if Warden Meadows did threaten Turner, the appeal procedure was still available to him. They argue that threats of retaliation, especially those that do not raise the specter of physical abuse, cannot make a remedy unavailable. We have not found a published court of appeals decision supporting that proposition. The circuits that have considered this issue have held that it is possible for retaliation or the threat of retaliation to make administrative remedies unavailable to an inmate. See Kaba v. Stepp, 458 F.3d 678, 686 (7th Cir. 2006); Hemphill v. New York, 380 F.3d 680, 688 (2d Cir. 2004). Today we join them.

13

A remedy has to be available before it must be exhausted, and to be "available" a remedy must be "capable of use for the accomplishment of [its] purpose." Goebert v. Lee County, 510 F.3d 1312, 1322–23 (11th Cir. 2007) (internal quotation marks and citation omitted). Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available.

One of the purposes of administrative remedies is to give prisoners a way of attempting to improve prison conditions without having to file a lawsuit. See Woodford v. Ngo, 548 U.S. 81, 93, 126 S. Ct. 2378, 2387 (2006). That purpose is thwarted if the prisoner is told that lodging a grievance will result in his overall condition becoming worse instead of better. Where cost outweighs benefit a rational decision maker will forego the benefit. When an inmate foregoes administrative remedies because prison officials have made it irrational for him to pursue them, the inmate loses a benefit that Congress intended to bestow on him. The corrections and judicial systems also lose the substantial benefits that administrative remedies were intended to provide them. See id. (recognizing that the PLRA's exhaustion requirement is designed "to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before

14

allowing the initiation of a federal case" (internal quotation marks, alterations, footnote, and citations omitted)); id. at 93–94, 126 S. Ct. at 2387 ("The PLRA also was intended to reduce the quantity and improve the quality of prisoner suits." (internal quotation marks and citation omitted)).

Stated differently, at least some threats disrupt the operation and frustrate the purposes of the administrative remedies process enough that the PLRA's exhaustion requirement does not allow them. The construction of "availability" that we adopt is beneficial because it reduces any incentive that prison officials otherwise might have to use threats to prevent inmates from exhausting their administrative remedies, and it thereby safeguards the benefits of the administrative review process for everyone.

We conclude that a prison official's serious threats of substantial retaliation against an inmate for lodging or pursuing in good faith a grievance make the administrative remedy "unavailable," and thus lift the exhaustion requirement as to the affected parts of the process if both of these conditions are met: (1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust. See

15

Hemphill, 380 F.3d at 688 ("The test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would 'a similarly situated individual of ordinary firmness' have deemed them available." (citation omitted)); cf. Smith v. Mosley, 532 F.3d 1270, 1277 (11th Cir. 2008) (noting that an inmate claiming a First Amendment violation based on retaliation for a complaint about prison conditions must show that the discipline "would likely deter a prisoner of ordinary firmness from complaining" (quotation marks and alteration omitted)). The particulars of this standard for determining the availability of administrative remedies where a threat is alleged can be honed against the facts of future cases, with particular attention paid to the special circumstances and security needs of prisons.

## V.

The defendants contend that, even applying a test similar to the one we are adopting, they are still entitled to have Turner's suit dismissed for two reasons. First, they assert that Warden Meadows' alleged threat—that he would transfer Turner if he filed another grievance or a lawsuit—was not sufficient to deter Turner from acting because he did act to file this lawsuit. However, as the Second Circuit noted in Hemphill:

> [T]hreats or other intimidation by prison officials may well deter a prisoner . . . from filing an internal grievance, but not from appealing directly to individuals in positions of greater authority within the prison system, or to external structures of authority such as state or federal courts . . . . because seeking a criminal investigation or filing a civil rights complaint may enable an inmate to draw outside attention to his complaints, thereby neutralizing threatened retaliatory conduct from prison employees.

Hemphill, 380 F.3d at 688. That makes sense to us, but we do not adopt a rule categorically precluding the factfinder from considering the fact that the inmate did file a lawsuit in spite of the alleged threat. We do not have that issue before us today. Instead, we simply decide that the fact the inmate has filed the lawsuit does not necessarily mean that the alleged threat did not deter him, or would not have deterred a reasonable inmate of ordinary firmness and fortitude, from pursuing the administrative remedy.

Second, the defendants argue that Warden Meadows' threat could not have made an appeal unavailable to Turner because Meadows retired before Turner filed this lawsuit. If Meadows' threats made administrative remedies unavailable, they reason, then his retirement would make them available again. Under this view Turner was required to file an out-of-time grievance once Meadows retired. This argument is unconvincing for two reasons. One is that Warden Meadows' retirement is not in the record; it is stated only in the defendants' brief. We do not

17

consider facts outside the record.  See Alexander v. Hawk, 159 F.3d 1321, 1323

n.2 (11th Cir. 1998).  The other reason this argument is unconvincing is that, if the

defendants' brief is to be believed, Meadows retired in September 2006, which

was a month after Turner filed his lawsuit.  "[A]n administrative remedy that is

unavailable until after the lawsuit is filed is not an available remedy within the

meaning of § 1997e(a)'s exhaustion requirement . . . ."  Goebert, 510 F.3d at 1324.

If Meadows retired when the defendants say that he did, that does not affect the

availability of Turner's administrative remedies before this lawsuit was filed.

**VI.**

There are disputed factual issues that may affect determination of whether

the remedy of appealing the unfavorable response, or lack of any response, to

Turner's formal grievance was available to him.  For example, the parties dispute

whether Warden Meadows actually tore up Turner's formal grievance and

threatened him.  Until the district court decides that and any other relevant factual

issues, it would be premature to apply to this case the standard we announce today.

See Bryant, 530 F.3d at 1374; see also Tarlton v. United States, 429 F.2d 1297,

1298 (5th Cir. 1970)[1] (remanding a  pre-PLRA prisoner case to the district court

---

[1]  See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent in the Eleventh Circuit all decisions of the former Fifth Circuit announced prior to October 1, 1981).

for factfinding on the exhaustion of administrative remedies issues); <u>Hess v. Blackwell</u>, 409 F.2d 362, 363 (5th Cir. 1969) (same).  In any event, we would prefer for the district court in the first instance to apply the standard to the facts it finds in this case.

The judgment is VACATED and the case is REMANDED for further proceedings consistent with this opinion.