[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 14, 2010
JOHN LEY
CLERK

No. 10-10339
Non-Argument Calendar
_____

D.C. Docket No. 4:06-cv-00457-RH-WCS

ANA CECILIA HALPIN,
FRANK EDWARD SWANSON,
DONALD EUGENE HALPIN,

Plaintiffs - Appellants,

THERESA ANN BELL, et al.,

Plaintiffs,

versus

CHARLIE CRIST, et al.,

Defendants,

JANET H. KEELS,
SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
MONICA DAVID,
FREDERICK B. DUNPHY,
JIMMIE L. HENRY, et al.,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(December 14, 2010)

Before TJOFLAT, HULL and MARTIN, Circuit Judges.

PER CURIAM:

Appellant Donald Eugene Halpin ("Halpin") is a Florida prison inmate; he is serving sentences for first-degree murder and other offenses. Appellant Ana Cecilia Halpin ("Ana Halpin") is his wife. Appellant Frank Edward Swanson ("Swanson") is a distant relative of Halpin's; he spent substantial sums in securing a lawyer to represent Halpin. On October 6, 2006, they sued twenty Florida officials, presenting civil rights claims under the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68; alleging violations of the First, Eighth and Fourteenth Amendments, and the *Ex Post Facto* Clause; and asserting common law tort claims for, among other things, breach of fiduciary duties.[1] The district court dismissed appellants' complaint and their amended complaint, and granted them leave to file a second amended complaint, which

_____

[1] Persons other than Halpin, Ana Halpin, and Swanson joined them as plaintiffs. Only Halpin, Ana Halpin, and Swanson are before us here.

2

added several Florida officials as defendants. The district court thereafter dismissed the claims of the second amended complaint and denied them leave to file a third amended complaint. The claims against all defendants except Monica David were dismissed for failure to state a claim for relief. The claims against David were dismissed on her motion for summary judgment. The court's final judgment was entered (pursuant to several of the foregoing orders) in favor of the defendants on all claims. Halpin, Ana Halpin, and Swanson now appeal the district court's judgment and some of the orders on which the judgment is based. We affirm.

Appellants identify four issues on appeal: whether the district court properly dismissed their RICO claim against two state officials; whether the district court properly concluded that Halpin failed to exhaust his administrative remedies with respect to his First and Fourteenth Amendment claims against three members of a prison staff; whether the district court properly dismissed their *ex post facto* claims; and whether the district court abused its discretion in denying their motion for leave to file a third amended complaint.

## I.

We review *de novo* a district court's grant of a motion to dismiss for failure to state a claim. *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 633 (11th

Cir. 2010). In order to survive a motion for dismissal, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* "Labels and conclusions," along with unsupported legal conclusions, are not sufficient. *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

A plaintiff has standing to pursue a claim under the RICO statute only if his injury confers RICO standing and he can allege and prove proximate cause. *Williams v. Mohawk Ind., Inc.*, 465 F.3d 1277, 1287 (11th Cir. 2006); *Bivens Gardens Office Building, Inc. v. Barnett Banks of Fla., Inc.*, 140 F.3d 898, 906 (11th Cir. 1998). The relevant provision of RICO provides that "[a]ny person injured in his business or property by reason of a violation of [the RICO statute] may sue . . . ." 18 U.S.C. § 1964(c); *Bivens Gardens*, 140 F.3d at 906. However, not all "factually injured" persons can recover under RICO. *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 266, 112 S.Ct. 1311, 1316-17, 117 L.Ed.2d 532 (1992). Rather, the plaintiff's injuries must be a "direct result" of the

4

alleged racketeering activity. *Bivens Gardens*, 140 F.3d at 906. Mere factual causation will not suffice, and the plaintiffs also must demonstrate that the defendants' commission of the predicate acts of racketeering was the proximate and direct cause of their alleged injuries. *Id.*; *see Holmes*, 503 U.S. at 266 n. 11, 112 S.Ct. at 1317 n.11, *citing with approval Pelletier v. Zweifel*, 921 F.2d 1465, 1499-1500 (11th Cir. 1991).

When, as here, a mail fraud or wire fraud scheme provides the predicate acts of racketeering for the RICO claim, the plaintiff must allege and prove that his injury flowed directly from the commission of such acts. *Byrne v. Nezhat*, 261 F.3d 1075, 1110 (11th Cir. 2001); *Pelletier*, 921 F.2d at 1499. The plaintiff may not assert misrepresentations that were directed toward another person or entity, but he must have been the target of the scheme to defraud and detrimentally relied on the misrepresentations. *Byrne*, 261 F.3d at 1110; *Pelletier*, 921 F.2d at 1499-1500. Considering the issue of proximate causation, the Supreme Court has reiterated the "directness requirement" of private actions under RICO, noting with particularity the difficulty that can arise when a court is forced to ascertain the amount of damages attributable to a defendant's indirect conduct. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458, 126 S.Ct. 1991, 1997, 164 L.Ed.2d 720 (2006).

5

The predicate mail or wire fraud offenses involved here involved a scheme perpetrated by James Crosby, former Secretary of the Florida Department of Corrections ("FDOC"), and Allen Clark, former Region I Director for the FDOC, to obtain bribes from a canteen provider to obtain a license to operate canteens in FDOC correctional facilities. The bribes, which were paid, purportedly led to artificially high canteen prices, which Halpin, Ana Halpin, and Swanson paid.[2]

The district court properly dismissed the RICO claim. The claim is too tenuous and indirect to survive a motion to dismiss. First, the State of Florida, specifically, the FDOC was the intended target of the fraudulent scheme. Halpin was not, nor were his co-plaintiffs; hence, they lacked standing to sue. Second, from the standpoint of proximate cause, their claimed injuries were not *directly* caused by the acts of racketeering, at least not within the meaning of the statute.

## II.

Appellants argue in their opening brief that the district court erred in dismissing the equal protection and retaliation claims the second amended complaint asserted against three of the defendants—Henry Boyd, Cornice West,

---

[2] Halpin purchased items from the canteen while incarcerated; Ana Halpin and Swanson made purchases while visiting him at the prison.

and Sherrie Spittler, members of the staff at the Wakulla County CI.[3] According to the second amended complaint, these defendants discriminated against Halpin, in violation of the equal protection clause, and retaliated against him, in violation of his right to free speech, by causing him to be denied parole—all because of the lawsuits he had filed following his imprisonment in 1980.[4] Other inmates with records worse than Halpin's had received favorable parole or clemency consideration by paying bribes.

Halpin is the only appellant having standing to bring these claims. The district court dismissed the claims for Halpin's failure to exhaust available administrative remedies under § 1997e(a) of the Prison Litigation Reform Act ("PLRA").

We review *de novo* the district court's dismissal. *Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000). Section 1997e(a) provides that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any

---

[3] In their reply brief, appellants argue that the court also erred in dismissing such claims against other defendants. We do not consider issues raised for the first time in an appellant's reply brief. *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).

[4] West allegedly told Halpin in March 2007 to dismiss a suit Halpin had brought against the FDOC, the Florida Parole Commission, and the Clemency Board if he wished to be considered favorably for parole or commutation of sentence. Boyd and Spittler allegedly told Halpin the same thing sometime later. Appellants also alleged that Halpin was denied parole because he refused to pay West, Boyd, and Spittler bribes.

other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This requirement is not jurisdictional, but an affirmative defense to be raised by the defendant. *Jones v. Bock*, 549 U.S. 199, 216-17, 127 S.Ct. 910, 921-22, 166 L.Ed.2d 798 (2007).

The PLRA requires that a prisoner exhaust all available administrative remedies before filing suit in federal court. *Woodford v. Ngo*, 548 U.S. 81, 88, 126 S.Ct. 2378, 2384, 165 L.Ed.2d 368 (2006). In order to exhaust, the inmate must comply with "all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* at 90, 126 S.Ct. at 2385 (quotation omitted) (emphasis original). "As a general rule . . . courts should not topple over administrative decisions unless the administrative body not only has erred, *but has erred against objection made at the time appropriate under its practice*." *Id.* (quotation and alteration omitted) (emphasis original). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91, 126 S.Ct. at 2386.

To exhaust administrative remedies in Florida, a prisoner must complete the administrative review process established by Florida regulations. In Florida, a prisoner must: (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance with the warden's office, and then (3) "submit an appeal to the Secretary of the [FDOC]." *Chandler v. Crosby*, 379 F.3d 1278, 1288 (11th Cir. 2004), *citing* Fla. Admin. Code Ann. §§ 33-103.005 to 103.007.

When "a prison official's serious threats of substantial retaliation against an inmate for lodging in good faith a grievance make the administrative remedy 'unavailable,'" the exhaustion requirement as to lodging a grievance or pursuing a particular part of the process is lifted. *Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008). A remedy is "unavailable" when: (1) the threat actually did deter the inmate from lodging grievances or from pursuing a particular part of the administrative process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust. *Id.* Informal grievances "must be received within a reasonable time of when the incident or action being grieved occurred. Reasonableness shall be determined on a case-by-case basis." Fla. Admin. Code Ann. § 33-103.11(1)(a). Formal grievances must be received no later than 15 calendar days from the date on which prison officials

9

responded to the informal grievance or from the date on which the incident or action being grieved occurred, if an informal grievance was not filed. *Id.* § 33-103.11(1)(b). Grievance appeals to the Office of the Secretary must be received within 15 calendar days from the date of response to the formal grievance. *Id*. § 33-103.11(1)(c).

Halpin failed to exhaust his administrative remedies. The record contains no evidence to support his contention that he timely filed the appropriate grievances. To the extent that he argues that he was unable to file grievances for fear of retaliation, his argument is severely undermined by the record of multiple unrelated grievances he filed, both before and after the alleged incident giving rise to the fear of reprisal. Though he suggests that Ana Halpin's e-mail to the Secretary of the FDOC exhausted Halpin's remedies, it did not. The relevant regulations do not provide for a family member to file formal grievances on a prisoner's behalf. Halpin failed to properly abide by the FDOC's grievance procedure and, consequently, he failed to exhaust his administrative remedies.

III.

In the context of parole, the Supreme Court has held that the *Ex Post Facto* Clause protects against post-offense rule changes that create a significant risk of increasing an inmate's punishment. *Garner v. Jones*, 529 U.S. 244, 255, 120 S.Ct.

1362, 1370, 146 L.Ed.2d 236 (2000); U.S. Const. Art. I § 10, cl. 1. Procedural rule changes may give rise to a valid *ex post facto* claim. *See Garner*, 529 U.S. at 250, 120 S.Ct. at 1367. The focus of the inquiry is not on whether the rule change "produces some sort of 'disadvantage' but on whether any such change increases the penalty by which a crime is punishable." *Id.* at 255, 120 S.Ct. at 1370 (quotation and alterations omitted). When the rule change does not by its own terms show a significant risk of increased punishment, the inmate must show that its retroactive application will result in a longer period of incarceration than under the earlier rule. *Id.*

Halpin is the only appellant with standing to prosecute the *ex post facto* claim at issue here. The Florida Supreme Court addressed and explained the rule change of which he complains when analyzing a case very similar to his situation. *See Wade v. Singletary*, 696 So.2d 754 (Fla. 1997) (considering an inmate's complaint that he was denied clemency based on his lack of a waiver, despite originally being recommended for clemency under rules and circumstances that would not have required a waiver). The Supreme Court noted that the change in Florida rules concerning the state clemency process did not have a substantive effect on the punishment visited on the inmate. *Id.* at 756. Rather, the Supreme Court compared the waiver process to the "granting of oral argument by an

11

appellate court," and it held that the merits of a Florida inmate's case for clemency are considered by the Florida Parole Commission ("FPC"), the Governor, and the Cabinet during the waiver proceedings. *Id.*

The merits of Halpin's clemency request were, in fact, considered during Halpin's 1992 clemency hearing, when he was denied a waiver. He has not alleged how the application of the waiver requirement to his 1992 clemency proceedings created a significant risk of increasing his punishment. This is especially true considering that he acknowledges receiving a second clemency hearing in 2004, when he was made aware of the alleged "error." The FPC, the Governor, and the Cabinet considered the possibility of granting Halpin clemency. In their discretion, they declined to do so. Accordingly, he raises no valid *ex post facto* claim.

## IV.

We review the denial of a motion to amend a complaint for an abuse of discretion. *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005). The underlying legal conclusion of whether a particular amendment would have been futile is reviewed *de novo*. *Id.*

A party may amend its pleading once as a matter of right within 21 days of service, or, "[i]n all other cases, a party may amend its pleading only with the

opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(1), (2). "The court should freely give leave when justice so requires." *Id.* The district court need not "allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Corsello*, 428 F.3d at 1014.

Appellants' motion to file a third amended complaint would have been the fourth complaint in already protracted litigation. The district court did not abuse its discretion in denying them leave to file it.

AFFIRMED.