[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12613
Non-Argument Calendar
_____

D.C. Docket No. 7:14-cv-00117-HL-TQL


RODERICK MAURICE WHITE,

                                                        Plaintiff-Appellant,

                        versus

MR. STATEN,
Officer Sergeant,
SHAWN EMMONS,
MARTY ALLEN,
SHUNDA WOODS,
GAIL KNOWLES, et al.,

                                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(December 1, 2016)

Before TJOFLAT, MARCUS, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Roderick White, a Georgia state prisoner proceeding *pro se*, filed this 42 U.S.C. § 1983 civil rights lawsuit alleging that Sergeant Geary Staten used excessive force against him, in violation of the Eighth Amendment, while he was incarcerated at Valdosta State Prison ("Valdosta"). White alleged that Staten struck his arm four or five times with a baton and then pepper sprayed his face after he complained about the prison's handling of his grievances. The district court dismissed White's lawsuit for failure to exhaust his administrative remedies as required by the Prisoner Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a). White appeals the dismissal of his complaint. Because the district court failed to resolve a factual dispute necessary to determine whether White exhausted his administrative remedies, we vacate and remand for further proceedings.

**I.**

White's complaint is based on an interaction he had with Staten at Valdosta on February 21, 2014. According to White's complaint, he asked to speak with Staten about another officer's failure to issue him a receipt for a grievance White had turned in on February 13. When Staten arrived at White's cell, White asked Staten to contact the Chief Counselor, Shunda Woods. Staten responded that he

was not going to do anything as long as White "had [his] arm on tray pass." White complained that he was tired of being manipulated and lied to by Valdosta staff. In response, Staten pulled out a black baton, stating, "White we ain't gonna do it like this here." White, who was not acting in a hostile or threatening manner, asked if Staten was "going to commit further injustice to [him]." Staten responded, "you damn right," and then forcefully swung the baton four or five times, striking White's elbow, forearm, and wrist. Staten then sprayed White in the face with pepper spray and closed the tray pass door, causing White, who suffers from asthma, to choke and gag. After the use of force, Staten did not permit the nurse to check on him properly.

The grievance procedures in effect at Valdosta are those contained in Georgia Department of Corrections' Standard Operating Procedure IIB05–0001 (effective Date 12/10/2012) ("SOP").[1] According to the SOP, exhaustion generally requires two steps: (1) filing an original grievance; and then (2) filing a central office appeal. Prisoners must submit the original grievance to any counselor no later than ten days from the date the prisoner knew, or should have known, of the facts giving rise to the grievance. It appears that the recipient of the grievance "must give the offender the receipt, which is the bottom portion of [the Offender Grievance Form]," at the time the grievance is turned in. SOP at 7

---

[1] The SOP is Doc. 28 on the district court docket. Pincites are to the internal pagination of the SOP.

3

(emphasis omitted).  The Warden has 40 days to respond to the grievance.  If the Warden does not respond within 40 days, the inmate may file his central office appeal, or continue to await the Warden's response, after which time he may appeal.

The two-step grievance process does not apply, though, when a prisoner "files a grievance involving sexual assault or physical force involving non-compliance with Department policies."  SOP at 10.  According to the SOP, these types of grievances are "automatically forwarded through the Scribe application to Internal Investigation Unit and/or the PREA Coordinator for review and whatever action is deemed appropriate."  *Id.*  The automatic referral is the final action on the grievance and terminates the grievance process.[2]  The SOP does not provide any avenue for a prisoner to appeal "whatever action is deemed appropriate" for his grievance.  Thus, a prisoner exhausts his remedies under the SOP once he properly submits a grievance alleging sexual assault or excessive force because "such actions automatically end the grievance process."  *See id.*

According to White, he submitted a grievance to Officer Rolando Gonzalez on February 27, six days after the incident.  In that grievance, he says, he

---

[2] It appears that the Warden also may choose to refer grievances involving matters apart from sexual assault or excessive force to the Internal Investigations Unit ("Internal Investigations").  A prisoner may not appeal from the Warden's decision to refer the matter to Internal Investigations.  Like the automatic referral of a grievance involving sexual assault or excessive force, the Warden's referral of a grievance to Internal Investigations is "the final action that will be taken on the Grievance and terminates the grievance procedure."  SOP at 10.

complained that Staten used excessive force against him in the ways described in his district court complaint. However, when he turned in the grievance, Gonzalez did not issue him a grievance receipt, nor did he process the grievance.

In the district court, Staten filed a motion to dismiss, which raised as a defense White's failure to exhaust his administrative remedies. Attached to the motion were evidentiary materials laying out the general two-step grievance process and showing that the prison had no record of a grievance related to the subject matter of the lawsuit. Staten also asserted that the grievance process had two steps, so even if White did file an original grievance, he still failed to exhaust his remedies by filing a central office appeal. White responded that he exhausted his available remedies by handing a grievance to Gonzalez on February 27. He also submitted letters he wrote to various prison officials, dated in the weeks and months following the February 21 incident, in which he stated that he gave Gonzalez a grievance on February 27 and criticized the prison's failure to issue grievance receipts. In reply, Staten submitted an affidavit from Gonzalez, who stated that White never gave him a grievance alleging excessive force by Staten.

The magistrate judge recommended that White's complaint be dismissed without prejudice for failure to exhaust all of his administrative remedies, as required by the PLRA. First, accepting as true White's version of the facts, the magistrate judge concluded that his claims were not subject to dismissal. So, the

5

magistrate judge went on to "make specific findings in order to resolve the disputed factual issues related to exhaustion," as authorized by this Court's decision in *Turner v. Burnside*, 541 F.3d 1077, 1082–83 (11th Cir. 2008) (describing the two-step procedure courts should use when evaluating a motion to dismiss for failure to exhaust under the PLRA).

The magistrate judge summarized the parties' positions on the central factual dispute—whether White filed a grievance alleging excessive force by Staten on February 27. But the magistrate judge did not resolve that dispute. Instead, the magistrate judge reasoned that White did not exhaust his administrative remedies because, even if he submitted a grievance on February 27, he did not "file a second, out-of-time grievance or . . . appeal the first grievance he allegedly gave to Officer Gonzalez." Because there was no evidence that White had been denied access to the grievance process, and because "[t]he sole act of submitting a grievance . . . does not satisfy all of the exhaustion requirements under both steps of the Georgia Department of Corrections' grievance process," the magistrate judge concluded that White failed to exhaust his excessive-force claim before filing suit under § 1983. The district court adopted the magistrate judge's recommendation, and this appeal followed.

**II.**

6

We review *de novo* a district court's interpretation and application of the PLRA's exhaustion requirement, as codified in 42 U.S.C. § 1997e(a). *Johnson v. Meadows*, 418 F.3d 1152, 1155 (11th Cir. 2005). We review the factual findings underlying an exhaustion determination for clear error. *Bryant v. Rich*, 530 F.3d 1368, 1377 (11th Cir. 2008).

The PLRA requires prisoners who wish to challenge some aspect of prison life, including claims of excessive force, to exhaust all available administrative remedies before resorting to the courts. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see* 42 U.S.C. § 1997e(a). Exhaustion is mandatory under the PLRA, and unexhausted claims cannot be brought in court. *Jones v. Bock*, 549 U.S. 211 (2007). When a state provides a grievance procedure for its prisoners, a prisoner "alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." *Johnson*, 418 F.3d at 1156 (quotation marks omitted).

In response to a prisoner lawsuit, defendants may file a motion to dismiss and raise as a defense the prisoner's failure to exhaust administrative remedies. *Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1209 (11th Cir. 2015). In *Turner*, we established a two-step process for deciding motions to dismiss for failure to exhaust under the PLRA. *Id.* District courts first should compare the factual allegations in the motion to dismiss and those in the prisoner's response

and, where there is a conflict, accept the prisoner's view of the facts as true. "The court should dismiss if the facts as stated by the prisoner show a failure to exhaust." *Id.* Second, if dismissal is not warranted at the first stage, the court should make specific findings to resolve disputes of fact, "and should dismiss if, based on those findings, defendants have shown a failure to exhaust." *Id.* (noting that defendants bear the burden of showing a failure to exhaust).

Here, as to the first step, we agree with the district court that White's allegations show that he exhausted all available administrative remedies for his excessive-force claim, though we give different reasons than the district court for saying so. According to the SOP, the prisoner's filing of a grievance alleging sexual assault or excessive force "automatically end[s] the grievance process." Such a grievance, as Gonzalez's affidavit confirms, is automatically forwarded through the "Scribe application" to the Internal Investigation Unit ("Internal Investigations"), at which point the grievance process terminates. The SOP does not provide for any additional action that the prisoner must take to exhaust in these cases. Accordingly, accepting as true White's allegation that on February 27 he submitted a grievance to Gonzalez alleging that Staten used excessive force against him on February 21, White exhausted all remedies available to him under the SOP.

As to the second step, we conclude that the district court failed to resolve a disputed issue of fact necessary to determine whether White exhausted his

8

administrative remedies.  Initially, though, we explain why the reasons given by the district court are insufficient to support dismissal.

The district court gave two reasons for finding a failure to exhaust: (1) White did not submit a second, out-of-time grievance; and (2) White did not appeal the first grievance he allegedly filed relating to the subject matter of this lawsuit.  The first reason does not support dismissal because, assuming the first grievance was properly filed, nothing in the SOP requires a prisoner to seek leave to resubmit the same grievance when the first grievance was properly filed and the failure to process the grievance is attributable to the actions of prison officials.  *See Turner*, 541 F.3d at 1083 (rejecting the defendants' argument that the plaintiff was required to seek leave to file an out-of-time grievance, because nothing "in the SOP require[d] an inmate to seek leave to resubmit the same grievance to the same official who destroyed the grievance when it was properly filed as a matter of right").[3]  The PLRA does not require prisoners "to craft new procedures when prison officials demonstrate . . . that they will refuse to abide by the established ones." *Id.*

The second reason likewise does not support dismissal because, as explained above, White did not need to file a central-office appeal in order to exhaust his

---

[3] We note in passing that both *Turner* and *Whatley* concerned an older version of the relevant SOP establishing the statewide grievance procedure.  The SOP applicable in this case establishes different procedures for the handling of grievances alleging excessive force.

9

grievance alleging excessive force.  Given the subject matter of his allegations, no appeal remedy was available to him under the SOP.

So the question of whether White exhausted all available remedies appears to come down to the resolution of a simple factual dispute—Did White submit a grievance to Gonzalez on February 27, 2014, alleging excessive force by Staten?  If he did, then he exhausted the remedies available to him under the SOP.  If he did not, then he failed to exhaust.  This is a dispute for the district court to resolve.  *See Whatley*, 802 F.3d at 1213 ("[W]e are a court of appeals.  We do not make fact findings.  We review them for clear error.").

Although Staten argues that White's contention "that he filed a grievance is belied by the record," the record is not so one-sided that the district court could not find in White's favor on this factual issue.  Despite Staten's evidence indicating that the prison had no record of a grievance filed by White on February 27 and Gonzalez's testimony that he did not accept a grievance from White on that date, the court could choose to credit White's statements, based on personal knowledge, that he submitted a grievance on February 27 related to the February 21 incident, but it simply was not processed as it should have been.  White's statements are supported by the letters he sent to various prison officials in the weeks and months following the incident in which he repeatedly and emphatically stated that he hand-

delivered a grievance to Gonzalez on February 27 but that Gonzalez never gave him a grievance receipt.[4]

Consequently, we vacate the judgment and remand for further proceedings consistent with this opinion.[5]  In particular, we remand for a factual determination as to whether White submitted a grievance on February 27.  And, because White has raised the district court's failure to hold an evidentiary hearing before dismissing his case as an error in this appeal, we believe that the court should hold an evidentiary hearing on remand before resolving any material questions of fact. *See Bryant*, 530 F.3d at 1377 n.16 (noting that, at least in the absence of a request for an evidentiary hearing, "a district court may resolve material questions of fact on submitted papers for the PLRA's exhaustion of remedies requirement").

**VACATED AND REMANDED.**

---

[4] The SOP arguably requires the recipient of the grievance to give the prisoner the "receipt," which is the bottom portion of the grievance form, at the time the grievance is submitted.  But it appears that, as a matter of Valdosta prison policy, grievance receipts were not being provided until it was decided whether to accept or reject the grievance.

[5] As part of the dismissal order, the district court granted White's motion to amend his complaint to add other prison officials as defendants.  The court dismissed these claims for failure to exhaust on the same grounds as the claim against Staten.  For that reason, we vacate the dismissal of these claims as well, though we express no opinion as to how they should be handled on remand.

11