[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-12934

Non-Argument Calendar

_____

RICHARD HARRIS,

Plaintiff-Appellant,

*versus*

SECRETARY, FLORIDA DEPARTMENT OF
CORRECTIONS, et al.,

Defendants,

R.E. LINDBLADE,
A. MCDONALD,
JASON HOWELL,
Registered Nurse,

2                    Opinion of the Court                    23-12934

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:22-cv-00667-BJD-LLL

_____

Before NEWSOM, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

Richard Harris appeals the dismissal of his 42 U.S.C. § 1983 suit against two corrections officers—R.E. Lindblade and A. McDonald—for failure to exhaust administrative remedies. Harris argues that the district court erred in dismissing his § 1983 claims because the actions of prison officials made the administrative grievance system unavailable to him and because the involvement of the office of the inspector general rendered Harris's remedies exhausted.

We review *de novo* whether a prisoner has exhausted administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). *Maldonado v. Baker Cnty. Sheriff's Off.*, 23 F.4th 1299, 1303 (11th Cir. 2022). The PLRA prohibits suits by prisoners "with respect to prison conditions under section 1983…until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Deciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process. *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). First, considering the complaint, the defendant's motion, and the plaintiff's response, the district court determines whether dismissal is warranted according to the plaintiff's version of the facts. *Id*. Under step one, the allegations in the complaint are accepted as true and are construed in the plaintiff's favor. *Id*. Second, if dismissal is not proper after step one, the district court makes specific findings of fact to resolve any disputed factual issues related to exhaustion. *Id*. Exhaustion is determined to have been completed or not as of the date the lawsuit was initiated. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1324 (11th Cir. 2007).

However, if administrative remedies are not available to the prisoner, exhaustion is not required. *Maldonado*, 23 F.4th at 1307. Administrative remedies are unavailable in three circumstances: (1) when the process "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when the process is "so opaque" that "no ordinary prisoner can discern or navigate it"; or (3) when prison officials use "machination, misrepresentation, or intimidation" to prevent prisoners from using the process. *Ross v. Blake*, 578 U.S. 632, 643-644 (2016). Two conditions must be met to render administrative remedy unavailable because of a prison official's threats against an inmate for pursuing grievances. *Turner*, 541 F.3d at 1085. First, the threat must have actually deterred the inmate from submitting a

grievance or using the administrative process, and second, the threat must be "one that would deter a reasonable inmate of ordinary firmness and fortitude" from submitting a grievance or using whatever remaining part of the process the inmate did not exhaust. *Id.*

The Florida Administrative Code establishes a three-step grievance process for prisoners. *See* Fla. Admin. Code Ch. 33-103.005 through 33-103.018. First, inmates generally must submit an informal grievance within 20 days of the incident being grieved. *Id.* at 33-103.005, 33-103.011(1)(a). Second, inmates must submit a formal grievance within 15 days of the response to the informal grievance. *Id.* at 33-103.006, 33-103.011(1)(b). Finally, inmates must submit an appeal to the Office of the Secretary of the Florida Department of Corrections within 15 days of the response to the formal grievance. *Id.* at 33-103.007, 33-103.011(1)(c). Prison staff are provided 15 days to respond to informal grievances and 20 days to respond to formal grievances. Fla. Admin. Code Ch. 33-103.011(3)(a-b). To exhaust this process, inmates must typically complete these steps in order and receive a response or wait a specified amount of time before proceeding to the next step. *See Id.* at 33-103.011(4). However, certain grievances, such as those alleging a reprisal or a medical issue, may be immediately submitted as formal grievances. *Id.* at 33-103.005(1). Invocation of or referral to the IG of the Florida Department of Corrections is not part of the FAC's grievance process, nor has this Court held that an inmate has exhausted administrative remedies based on involvement of the IG's office.

Here, the district court properly began with step one of the *Turner* analysis and construed Harris's grievance -039 as an attempt to grieve Lindblade and McDonald's alleged assault and battery on May 12, 2022.  Grievance -039 was filed as a formal medical grievance.  While it may more properly be considered a grievance of a reprisal, both types of grievance are permitted to be submitted at the formal level.  Fla. Admin. Code Ch. 33-103.005(1).  The following facts are undisputed.  The grievance was dated May 23, 2022, and marked as received on June 8, 2022.  The Suwanee warden's office thus had until June 28, 2022, to respond.  Fla. Admin. Code Ch. 33-103.011(3)(b).  The grievance was denied on June 13, 2022, but Harris filed suit in the district court on June 10, 2022, before receiving the denial and before the end of the 20-day period for the warden's office to respond to the grievance.  Because Harris mailed his complaint to the district court on June 10, 2022, that is the date by which he must have exhausted his administrative remedies.  *Goebert*, 510 F.3d at 1324.

Harris never pursued the final step of the grievance process under the FAC by appealing the denial of formal grievance -039 to the Office of the Secretary of the Florida Department of Corrections.  *See* Fla. Admin. Code Ch. 33-103.007.  Moreover, the denial of grievance -039 informed Harris that he could "obtain further administrative review" of his grievance by completing a "Request for Administrative Review or Appeal," providing certain attachments, and sending his grievance to the Bureau of Inmate Grievance Appeals within 15 days.  The district court thus correctly found that under the first step of the *Turner* analysis, the undisputed facts show

that Harris sought judicial relief before completing the grievance process and so did not exhaust his administrative remedies.

However, the parties disputed facts relating to Harris's assertion that administrative remedies were unavailable to him. Proceeding to the second step of the *Turner* analysis requires findings of fact where the parties disagree. *Turner*, 541 F.3d at 1082. Administrative remedies are only considered unavailable in three circumstances: when (1) prison officials are consistently unwilling to provide relief to aggrieved inmates, (2) the grievance process is too opaque for a normal prisoner to navigate, or (3) prison officials use "machination, misrepresentation, or intimidation" to prevent inmates' use of the process. *Ross*, 578 U.S. at 643-44.

Harris does not argue that the grievance process was too opaque to navigate, and he admitted he knew that "available administrative remedies are to be exhausted before bringing legal claims to the Court." Instead, Harris argues that the grievance process was a dead end and that prison officials prevented his use of the process.

For the process to be unavailable as a dead end, an inmate must show a failure of prison officials "to provide any relief to aggrieved inmates." *Ross*, 578 U.S. at 643. Harris neither alleged nor provided evidence that the system provides no relief to inmates generally. Harris asserts that "grievances with merit are denied" by referencing the response to grievance -0108 and claiming the reason for its denial is contradicted by the nurse's report. While grievance -0108 may have had merit, Harris gives no explanation

for his failure to continue with the administrative remedy process after it was denied.  Grievance -0108 was an informal grievance, and the bottom of the form explained how to "obtain further administrative review of your complaint" by submitting form DC1-303 to the warden or assistant warden within 15 days of receiving a response.  Further, the record shows that Harris did receive at least some relief between April 16 and June 15, 2022, from approved grievance 0074.  Contrary to functioning as a dead end, the responses to Harris's grievances consistently explained how he could seek further administrative review.  For the few grievances which Harris did appeal to the final level of the administrative process, Harris did not allege nor explain why the responses he received were improper and indicative of a "dead end" process.

Harris also argues that the process was a dead end because many of his grievances were not processed.  He cites grievance -0009, an informal grievance which claims that a prior grievance submitted on February 4, 2022, was held until February 15 and not answered "until the 15 day time limit expired, in an attempt to keep me from exhausting F.D.O.C. remedies."  Harris, however, misunderstands the 15-day time limit under the FAC.  He seems to think that he must submit a formal grievance within 15 days of submitting his initial informal grievance.  But the 15-day period for an inmate to submit a formal grievance only begins on "the date on which the informal grievance was responded to."  Fla. Admin. Code Ch. 33 103.011(1)(b)(1).  This time frame is also printed at the bottom of the standard informal grievance form, DC6-236.  Prison staff are provided 15 days to respond to informal grievances and 20

days to respond to formal grievances.  Fla. Admin. Code Ch. 33 103.011(3)(a-b).  Harris does not allege that staff have taken longer than the permissible time to respond.

Harris also alleges the administrative remedy process is unavailable to him due to repeated threats from appellee Lindblade that made Harris fear for his life causing him to cease filing grievances.  Under *Turner*, for a prison official's threats against an inmate for pursuing administrative remedies to render the remedy process unavailable, the threat must in fact deter the inmate from using the administrative process and must be a threat that would deter a reasonable inmate from the same.  *Turner*, 541 F.3d at 1085.  Harris alleged in his complaint that Lindblade threatened him in September 2021, on April 20, 2022, and on May 12, 2022.  In his response to Lindblade and McDonald's motion to dismiss, Harris claimed for the first time that Lindblade again threatened him "after plaintiff filed the grievances on May 23, 2022."  However, Harris wrote formal grievances which he dated May 18, 23, and 24, 2022, and those grievances were stamped received on June 6, June 8, and May 26, respectively.   Then, in his Blue Brief, Harris for the first time alleges that Lindblade threatened him on May 24, 2022, to support his claim that he has filed no new grievances since the most recent threats against him.  Harris alleges the May 24 threats made him fear for his life because Lindblade told Harris that "he can still get to him in segregation."

It seems unlikely that the formal grievances Harris argues he submitted on May 18 and 23 were only marked received on June 6

and June 8, while a formal grievance he dated May 24 was marked received on May 26. The district court thus did not err in finding that Lindblade's alleged threats did not actually deter Harris's use of the grievance process. Moreover, Harris shares few details of the May 24 incident, only reporting that Lindblade "reiterated his treats [sic] of 5/12/22, telling appellant that he can still get to him in segregation." And even if Harris was intimidated from filing informal or formal grievances to the prison, he does not explain why he was comfortable filing this lawsuit on June 10, but too intimidated to submit a grievance of reprisal directly to the Secretary for the Florida Department of Corrections as permitted under FAC 33-103.007(3)(a). *See Dimanche v. Brown*, 783 F.3d 1204, 1211 (11th Cir. 2015) (where an inmate reported being told he would be "gassed to death" in a grievance of reprisal submitted directly to the Secretary of the Florida Department of Corrections).

Lastly, Harris argues that his remedies have been exhausted due to the inspector general's investigation. However, no binding precedent of this Court holds that the involvement of or a referral to the IG's office properly exhausts a prisoner's administrative remedies. But even if that were the case, the response to grievance -019 that mentioned an IG investigation was mailed to Harris on June 14, 2022. Harris would not have exhausted his remedies by the relevant day—June 10, 2022, the day he filed his lawsuit—as required by law. *Goebert*, 510 F.3d at 1324. Moreover, in his second amended complaint he explained that his meeting with the IG was a result of his call to the prison abuse hotline on May 26, 2022—i.e.

the IG inquiry did not result from any of Harris's grievances—and thus was independent of and separate from the grievance process.

For the above reasons, we affirm the district court's dismissal of Harris's civil action because he failed to satisfy the exhaustion requirement of 42 U.S.C. § 1997e(a) or prove that administrative remedies were unavailable.

**AFFIRMED.**