[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14824
_____

D.C. Docket No. 5:16-cv-00444-TES-CHW


JEFFERY GETER,

                                                      Plaintiff-Appellant,

versus

BALDWIN STATE PRISON, et al.,

                                                      Defendants,

DR. AKUNWANNE,
DR. KING,

                                                      Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(September 10, 2020)

Before BRANCH and MARCUS, Circuit Judges, and HUCK,* District Judge.

BRANCH, Circuit Judge:

Jeffery Geter, a Georgia inmate at Baldwin State Prison, filed a *pro se* 42 U.S.C. § 1983 complaint alleging, among other claims, that medical staff at the prison failed to give him proper medical treatment in violation of the Eighth Amendment.  The district court ultimately dismissed this claim, finding that Geter failed to exhaust his administrative remedies.  On appeal, Geter argues that (1) the grievance process was unavailable to him due to his mental disabilities, meaning there was a statutory exception to the duty to exhaust, (2) the grievance process was unavailable to him because a prison official who assisted him filled out the grievance form in such a way that it violated procedural rules and was rejected, and (3) the district erred by shifting the burden of the affirmative defense of exhaustion to Geter.  After a careful review, and with the benefit of oral argument, we vacate and remand for further proceedings on the availability of administrative remedies under *Ross v. Blake*, 136 S. Ct. 1850 (2016).

## I. Background

---

* The Honorable Paul C. Huck, United States District Judge for the Southern District of Florida, sitting by designation.

2

Geter is an inmate designated as having mental health needs[1] with an "8[th] grade special education in schooling." According to his own account, Geter is serving a "30 or 40" year sentence that began in 1998 at Baldwin State Prison. Geter has been diagnosed with several medical issues, including Parkinson's disease, bipolar disorder, and epilepsy. Geter has received treatment for some of these issues but still experiences severe symptoms, including loss of feeling on one side of his body, occasional losses of consciousness, and double vision. Geter initially filed a grievance with the prison on April 28, 2016, indicating he had problems with his medical treatment, with stolen belongings, and with a plethora of other matters. The Warden denied the grievance because Geter had been seen by the medical staff and was being treated. Geter filed an administrative appeal later that year. The Central Office of the Georgia Department of Corrections ("GDC") rejected his appeal because his initial grievance did not follow the proper procedure—it combined multiple grievance issues into one form. Geter then filed a § 1983 claim in federal court alleging deliberate indifference to serious medical needs amidst a variety of unrelated claims. Because this case turns on precisely what was said in which pleading, we go through the relevant filings here in detail.[2]

---

[1] At oral argument, counsel for Geter explained to this Court that the prison system designates certain inmates as needing various forms of mental health treatment in jail.

[2] We pause to commend the district court and magistrate judge for their thorough parsing of the pleadings in this case. Geter filed 59 *pro se* filings that are very difficult to decipher before this case was taken on appeal. We have done our best to discern what Geter was alleging

3

Starting on October 12, 2016, Geter filed multiple documents in the district court which did not comply with even the most basic pleading requirements. After some instruction from the court, he filed an amended complaint alleging a litany of claims against Baldwin State Prison, some employees of the prison, and some fellow prisoners, on December 27, 2016 with several exhibits attached. The first page of the first exhibit to the amended complaint was a grievance form filled out in Geter's handwriting that he dated April 22, 2016. This grievance form contained a box for staff to fill out, which included a blank for its "completed" date—*i.e.*, when it was received by the prison staff member. On this first form, a staff member by the name Mary Danzy signed and dated the form as "completed" on April 27, 2016. Following this grievance was a second, undated and unsigned grievance form consisting of two pages filled out in Geter's handwriting. The third document in the first exhibit was another grievance form, this one signed by Geter and dated May 6, 2016. Neither of these latter two forms has a signature or date from a prison official who received them. Next, there is a "Receipt for Grievance at Counselor's Level" form, signed by Mary Danzy on April 27, 2016. Finally,

in each document and will quote him when necessary. Finally, we are using the labels assigned to his pleadings by the district court and magistrate judge, even if Geter himself did not style the document in such a manner. As such, we consider only Geter's relevant pleadings in this case: the operative amended complaint, the attachments to an earlier draft of the complaint, his responses to Dr. Akunwanne's motion to dismiss, and the objections filed to the magistrate judge's report and recommendation.

Geter attached to his first exhibit a Central Office appeal response, signed by that office on September 28, 2016, and signed by Geter to acknowledge receipt of the appeal decision on December 3, 2016.

Geter also attached to his amended complaint as Exhibit Two a handwritten and notarized statement which contained the details of his claims. In this affidavit, he listed several medical problems, including that he "can not [sic] think good." [3] In relation to the grievance process, he stated that Mary Danzy "told [him] she [was] the grievance coo[rdina]tor." He also said that Mary Danzy had mailed his grievance appeal for him. Finally, he stated that "I do not think Mary Danzy CO-2 s[h]ould of have my grievance so this is a due process an[d] negligenc[e]."

The operative amended complaint was filed on March 22, 2017 and repeated several of Geter's allegations from earlier drafts of the complaint. As defendants in his suit, Geter named Baldwin State Prison, Danzy, a few other prison officials, Drs. Akunwanne and King, some inmates, and three or four John Does. Geter alleged, among other things, that he needed medical help and that the prison doctors were not giving him the medications he needed to manage his pain. Geter alleged that he had asked Danzy for an informal grievance, and Danzy informed

---

[3] Geter also asked for a lawyer to be appointed to help him with his case, but the district court denied his request. Geter asked the district court for a lawyer in almost every document he filed, even after his initial request was denied. Geter was represented on appeal by the American Civil Liberties Union. On remand, the district court may wish to appoint counsel for ease of resolution.

5

him that the prison no longer used informal grievances.  According to the complaint, Danzy also informed Geter that she "did all grievance [sic]" and so Geter "did" one with her.

As required by the Prison Litigation Reform Act ("PLRA"),[4] the magistrate judge issued a report and recommendation on July 13, 2017, to dismiss most claims either for suing an improper defendant or failing to state a claim but to allow the Eighth Amendment deliberate indifference to medical needs claims against the two doctors to go forward.[5]  The district court ultimately adopted the magistrate judge's recommendation.

Defendant Dr. Akunwanne filed a motion to dismiss based on a failure to exhaust administrative remedies.  Dr. Akunwanne argued that the grievance upon which Geter's complaint was based had been denied by the prison due to the inclusion of multiple issues in one grievance, which violated GDC rules, and therefore Geter had not properly exhausted his administrative remedies—*i.e.*, he had failed to follow the procedural rules instituted by the prison for the grievance

---

[4] The PLRA requires courts to "screen" complaints by prisoners "as soon as practicable after docketing," where the defendant is "a governmental entity or officer or employee of a governmental entity."  28 U.S.C.A. § 1915A(a).  During this review, district courts are required to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted."  *Id*. § 1915A(b)(1).

[5] Dr. King was subsequently dismissed from the lawsuit because the process server was unable to locate anyone by that name at the place Geter described.

procedure.  The motion was accompanied by a declaration by Baldwin State Prison employee Sebrena Grant.  Sebrena Grant stated she was the "Chief Counselor" at Baldwin State Prison as well as the Grievance Coordinator.  She asserted that she was the Grievance Coordinator for over two years.[6]  She also outlined the standard procedure for filing grievances within the GDC and included a copy of the 2015 grievance procedure in effect at the time Geter filed his grievances.  The standard operating procedures provide that a grievance can only cover one issue or incident.

The grievance process involves two steps: first, a submission of a formal grievance by the inmate to the warden via a prison Counselor; second, an appeal to the Central Office.  Specifically, in the first step, the Grievance Coordinator, who oversees all the prison counselors and the grievance process at a prison facility, screens the grievance for procedural compliance and submits it to the warden with a recommendation as to whether to accept it or reject it.[7]  If the grievance is rejected, the prisoner may appeal the rejection to the Central Office.[8]  If the

---

[6] The declaration was signed on September 13, 2017, which would mean Grant was the Grievance Coordinator during the years relevant to Geter's grievance process (2015–2016).

[7] The warden may reject the grievance if it raises a non-grievable issue, is not timely filed, includes threats or profanity, or if the offender already has two active grievances.

[8] The Central Office may reject the grievance for a number of reasons, including: (1) there is more than one issue per grievance; (2) the grievance was filed outside of the policy time frames; (3) there is a non-grievable issue listed in the grievance; (4) the grievance includes threats, profanity, or racial slurs; (5) the grievance exceeds the filing limitations; and (6) the original grievance form was not attached to the appeal.

grievance is accepted, an investigation into the allegations is conducted, a report is submitted to the Grievance Coordinator, and the Grievance Coordinator then submits a recommendation to the warden. Thereafter, the warden issues his or her written decision—the end of the first step—and the prisoner may appeal that decision to the Central Office—the second step. Grant attested that "each offender receives an oral explanation of the grievance process as well as a copy of the Orientation Handbook for Offenders" upon entering the GDC.

Grant's declaration also contained information about Geter's actual use of the grievance procedure. According to prison records, Geter had only ever filed two formal grievances. The relevant grievance at issue here was filed on April 28, 2016 and was ultimately denied by the Central Office on September 28, 2016 for failure to comply with the single-issue rule. The prison's copy of Geter's grievance forms were also attached to Grant's declaration. Notably, the prison's copy of the grievance differed from the one Geter submitted to the court: the prison copy of the form was clearly written in someone else's handwriting and dated one day later.[9]

---

[9] The substance of the two forms also seems to differ. The grievance form attached to Grant's declaration begins with allegations of improper medical treatment, whereas the form Geter submitted begins with a complaint regarding another inmate stealing his identification card and packages.

8

The magistrate judge issued a notification to Geter regarding the substance of the defendant's motion to dismiss and the standards which needed to be met to survive it. This notification included a section regarding Geter's right to amend his complaint and encouraged him to develop the record concerning his grievance procedure exhaustion.

After a series of unrelated filings, Geter filed his response to the motion to dismiss on October 18, 2017.[10] In that response, Geter said Mary Danzy "did all plaintiff['s] grievance[s] and plaintiff ask to see the coordinator[] about the grievance but officer Mary Danzy said she was the one [who] do[es] all of the coordinat[ion] [of] the grievance." Geter went on to say "Officer Mary Danzy['s] name is on all of the grievance[]s. Officer Mary Danzy refused and denied plaintiff['s] grievance." Geter later reiterated that he asked for a grievance and to see the grievance coordinator but Mary Danzy "said she is the grievance coordinator" and that she handled all grievances. Geter repeated that Mary Danzy denied his grievance. Geter alleged that he was "denie[d] the due process of the grievance" and denied "administrative remedies of the grievance." Geter further alleged that Mary Danzy "lie[]d about be[ing] the grievance coordinator." Geter

---

[10] Geter actually filed several responses to the motion to dismiss. Given the liberality with which we are to construe *pro se* pleadings, *Patterson v. MacDougall*, 506 F.2d 1, 2 (5th Cir. 1975); *Carmichael v. United States*, 966 F.3d 1250, 1258 (11th Cir. 2020), we consider all his responses, as did the court below.

contended that he had exhausted his administrative remedies.  Geter also noted that he had "unusual circumstances" that prevented him from "timely doing some of his law work."

The magistrate judge issued a report and recommendation, recommending that Dr. Akunwanne's motion to dismiss be denied.  The magistrate judge found that Dr. Akunwanne did not carry his burden of demonstrating that the grievance process was "available" to Geter as required to prevail on the "failure to exhaust" affirmative defense.  The magistrate judge acknowledged that Geter had failed to comply with the single-issue grievance rule and thus had not properly exhausted his administrative remedies.  But the magistrate judge nevertheless concluded that the complaint should not be dismissed for two reasons: first, Dr. Akunwanne had not addressed whether Geter's alleged mental deficiencies made the grievance process effectively unavailable to him; second, Dr. Akunwanne had not adequately explained the "inconsistency" of the dates, handwriting, and substance of the grievance forms submitted by Geter and by Grant.  The magistrate judge noted that the GDC allows institutional staff to assist inmates who need special help with filling out the grievance forms, and the handwriting change suggested Geter received such help, which made the error a potential product of the "misleading" assistance of a prison staff member.  Thus, Dr. Akunwanne had not shown adequately that the administrative grievance process was "available" to Geter.

10

Dr. Akunwanne filed objections to the report and recommendation. He stated that the Supreme Court, in *Ross v. Blake*, articulated an exhaustive list of circumstances in which administrative remedies could become "unavailable" to a prisoner, none of which applied to Geter. Dr. Akunwanne argued that he should not have to rebut Geter's mental capabilities, because he had no notice those capabilities made the process "unavailable." Dr. Akunwanne also objected that there was "no evidence" that the plaintiff had received help from anyone else, but even if he did, the "misleading . . . assistance" which caused the grievance form to be filed with multiple grievances on one form would have to be intentional to fall under *Ross* and there was no evidence that it was intentional here.

Geter also filed a response to the magistrate judge's report, stating that he "can not get the help he needs" and that he "can not think good." Geter also alleged that he was "not in good health to be ab[le] to do his grievance p[ro]cedure as good as he should."

Upon review, the district court declined to adopt the magistrate judge's report and recommendation. The district court disagreed with the magistrate judge's interpretation of "unavailability" of the grievance process, finding that Geter's mental deficiencies did not fall into one of *Ross*'s specified categories that render a grievance process unavailable. In the alternative, however, the district court found that Geter subjectively understood the grievance process because of

11

the pleadings he had filed in the present case.  Finally, as to the concern of Geter

being misled by a prison employee, the district court found that Geter never

alleged anyone gave him improper advice.  The district court then dismissed the

complaint against Dr. Akunwanne.  This appeal followed.

## II. Standard of Review

"We review *de novo* the district court's interpretation of section 1997e(a)'s

exhaustion requirements and application of that section to [a plaintiff's] claims."

*Higginbottom v. Carter*, 223 F.3d 1259, 1260 (11th Cir. 2000).  We review the

district court's findings of fact for clear error.[11]  *Bryant v. Rich*, 530 F.3d 1368,

1377 (11th Cir. 2008).  "For all other facts, we accept as true the facts pleaded in

[the plaintiff's] complaint and draw all reasonable inferences in his favor."

*Whatley v. Smith*, 898 F.3d 1072, 1082 (11th Cir. 2018).  A "handwritten pro se

document is to be liberally construed."  *Estelle v. Gamble*, 429 U.S. 97, 106

(1976).

## III. Discussion

The PLRA contains a limitation on suits prisoners can bring regarding prison

conditions:

---

[11] Normally, there would be no findings of fact in a court's ruling on a motion to dismiss. However, we have remarked previously that "[w]here exhaustion—like jurisdiction, venue, and service of process—is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008).

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted*.

42 U.S.C. § 1997e(a) (emphasis added).  The Supreme Court has noted that this statutory language means that "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory."  *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).  The exhaustion requirement drawn from the PLRA means "proper exhaustion."  *Id*. at 93.  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  *Id*. at 90–91.  Accordingly, an inmate who has not properly exhausted administrative remedies cannot seek further relief in federal courts.  *See id*. at 88.

However, "[a] remedy has to be available before it must be exhausted." *Turner v. Burnside*, 541 F.3d 1077, 1084 (11th Cir. 2008).  Here, both parties concede that the grievance form submitted by Geter did not comply with department policy, which is supported by the record.   The parties are therefore in agreement that Geter did not properly exhaust his administrative remedies.  Thus, the only dispute before us is whether the grievance process was "available" to Geter as contemplated by 42 U.S.C. § 1997e(a).[12]

---

[12] Because proper exhaustion is not at issue, we do not discuss the two-step process for exhaustion outlined in *Turner* but focus our analysis on whether the grievance procedure was

13

The Supreme Court has provided an overarching framework for evaluating the "availability" of administrative remedies in *Ross v. Blake*. In *Ross*, the Court rejected the Fourth Circuit's attempt to create a "special circumstances" exception to the PLRA's exhaustion requirement. 136 S. Ct. at 1856. However, the Court remanded the prisoner's claim to be re-analyzed under the "availability" doctrine, which was based in the PLRA's "own, textual exception to mandatory exhaustion." *Id*. at 1858. The Court's explanation of that doctrine in *Ross* is at the heart of the dispute between the two parties in our case:

> Building on our own and lower courts' decisions, we note as relevant here three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief. Given prisons' own incentives to maintain functioning remedial processes, we expect that these circumstances will not often arise. But when one (or more) does, an inmate's duty to exhaust "available" remedies does not come into play.

*Id*. at 1859 (internal citations omitted). The Court then enumerated three circumstances in which administrative remedies were unavailable: (1) when the administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes… incapable of use… [and] no ordinary prisoner can discern or navigate it"; and (3) when "prison administrators

---

available. *See Turner*, 541 F.3d at 1082; *cf. Dimanche v. Brown*, 783 F.3d 1204, 1214 n. 3 (11th Cir. 2015) (declining to address the availability analysis because the exhaustion requirements were satisfied).

14

thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 1859–60.

A. The District Court was Correct to Dismiss Geter's Argument that His Mental Capacities Made the Grievance Procedure Unavailable

Geter's first argument on appeal regarding the availability of his own administrative remedies is that we should expand on this precedent by holding that *Ross*'s three categories of unavailability were simply examples and not exhaustive.[13] Accordingly, argues Geter, we should consider his cognitive and mental difficulties in determining whether the remedies were unavailable to him. For two reasons, however, we need not address whether the list in *Ross* is exhaustive and thus whether Geter's situation comprises a new type of "unavailable" prison grievance procedure.

First, we agree with the district court that Geter failed to plead at any relevant point that his mental capabilities made the grievance procedure

---

[13] Other circuits have addressed whether *Ross*'s categories are exhaustive. *See Ramirez v. Young*, 906 F.3d 530, 538 (7th Cir. 2018) (concluding that *Ross*'s three circumstances "were only examples, not a closed list, and to the extent the district court thought they were the latter, it erred."); *Andres v. Marshall*, 867 F.3d 1076, 1078 (9th Cir. 2017) ("By way of a non-exhaustive list, the Court recognized three circumstances in which an administrative remedy was not capable of use to obtain relief despite being officially available to the inmate."); *Williams v. Corr. Officer Priatno*, 829 F.3d 118,124 n.2 (2d Cir. 2016) ("We note that the three circumstances discussed in *Ross* do not appear to be exhaustive, given the Court's focus on three kinds of circumstances that were 'relevant' to the facts of that case."); *see also Rinaldi v. United States*, 904 F.3d 257, 267 (3d Cir. 2018) ("Given our conclusion that this circumstance falls within the third category described in *Ross*, we do not have occasion to address, as have some of our Sister Circuits, whether *Ross*'s three categories are exhaustive or merely illustrative.").

15

subjectively unavailable to him.  As the district court noted, a proper *Turner* analysis of exhaustion after *Ross* requires the plaintiff to allege a grievance procedure is unavailable to him in response to the defendant's affirmative defense of failure to exhaust.  Responding with allegations that a prison system is unavailable allows the district court to complete the necessary analysis set forth in *Turner* for evaluating whether a defendant is entitled to have a complaint dismissed for failure to exhaust.  *See Turner*, 541 F.3d at 1082 (requiring a court to compare "the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response" and accepting the plaintiff's version where there is a conflict).  While the burden is on the defendant to show an available administrative remedy, once that burden has been met, the burden of going forward shifts to the plaintiff, who, pursuant to *Turner*, must demonstrate that the grievance procedure was "subjectively" and "objectively" unavailable to him.[14]  *Id.* at 1085 (holding that a threat renders a prison grievance system unavailable when "(1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a

---

[14] Two of our sister courts use the same analytical framework post-*Ross*: "But once the [prison official] has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018); *see also Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011) ("Once a defendant proves that a plaintiff failed to exhaust, however, the onus falls on the plaintiff to show that remedies were unavailable to him as a result of intimidation by prison officials.  Plaintiffs should be afforded an opportunity to counter the exhaustion defense in this manner regardless of whether the issue is asserted by defendants or raised by the court sua sponte.").

particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust."). Here, Geter did not allege the substance of his mental disabilities claim—that it rendered the grievance process unavailable—until after Dr. Akunwanne filed objections to the magistrate judge's report and recommendation. Geter filed a total of 59 filings in this case. Fifty of those filings occurred before he first asserted that he "was not in good health" and therefore unable to perfect "his grievance" as well as he should have. As Dr. Akunwanne noted in his objections to the report and recommendation, the defense did not have adequate notice of this claim so that it could marshal evidence to demonstrate the process was available for persons in Geter's position. Additionally, there is no allegation in the pleadings that Geter ever alerted the prison that he was not able to complete the grievance process because of his mental disabilities. *See Brown v. Sikes*, 212 F.3d 1205, 1207–08 (11th Cir. 2000) (holding that to properly exhaust an administrative remedy, a prisoner must grieve with "all the relevant information he has").

Second, we agree with the district court that the pleadings filed in this case demonstrate Geter's ability to understand the grievance system's one-issue rule, which is certainly less complicated than the many procedures applicable in the district court. True, Geter's filings could, as the district court noted, be "graciously

17

described as rambling." But the fact remains that he was able to file them and has, in a fashion, advanced arguments and responded to allegations of the defense. Further, Geter used the grievance procedure in 2012, long before the 2015 incident at issue, and was able to appeal that grievance as well. The medical conditions and symptoms described in the pleadings do not seem to have, at least facially, a connection to Geter's ability to understand the grievance process. Geter himself provided no information for us to determine that there would be any such connection. And although he attached some medical documents concerning the symptoms of epilepsy, they in no way establish, let alone even suggest any connection between epilepsy and the inability to understand the prison's one-issue rule.

B. Geter's Argument that Misleading Prison Assistance Caused His Grievance Errors Should Have Been Considered

We now address Geter's second argument regarding the availability of his own administrative remedies: that Mary Danzy's assistance in filling out his grievance form—which was rejected because it improperly combined multiple grievance issues onto one form—made the administrative relief unavailable to him.

Geter's argument that Danzy provided alleged misleading assistance could fall within the third category described in *Ross*. *See Ross*, 136 S. Ct. at 1860 (listing as the third unavailable circumstance instances where "officials *misled* or threatened individual inmates so as to prevent their use of otherwise proper

18

procedures." (emphasis added)).  We note that Geter's allegations against Danzy

had some traction in the lower court.  The magistrate judge found that the

grievance form completed in someone else's handwriting "suggest[ed] that

Plaintiff may have received [such] assistance" and that the "grievance system was

not available to Plaintiff due both to his alleged mental deficiencies and to

Plaintiff's possible reliance on misleading official assistance."  But the district

court disagreed with the magistrate judge's recommendation on this issue,

reasoning as follows:

> Moreover, to the extent Plaintiff received assistance in completing his
> grievance, Plaintiff never alleged that anyone, prison official or
> otherwise, ever gave him improper advice regarding the filing of his
> grievance, did anything wrong to prevent proper completion of the
> form, or otherwise thwarted its physical filing.  To require the
> Defendant to preemptively account for circumstances never raised by
> Plaintiff—that Plaintiff was not competent to understand the
> grievance procedure before him or that someone completed Plaintiff's
> grievance request incorrectly so that it would be improperly filed—
> falls outside *Ross*'s unavailability protection.

(footnote omitted).

The district court thus ruled that Geter never alleged improper advice or bad

behavior on the part of any prison official.  This holding was in error, especially

given the liberality with which we are to construe *pro se* filings, because the

district court overlooked some of the pertinent allegations in Geter's pleadings.[15]

---

[15] We reiterate that these pleadings were quite difficult to decipher, and so we understand how Geter's allegations against Mary Danzy could have been overlooked.

19

With the backdrop of his grievance form having been rejected for a procedural violation, Geter alleged several times that a prison official misled him as he attempted to utilize the grievance process. He specifically named Mary Danzy as a defendant in his operative complaint. Then, in his statement attached to his amended complaint, Geter specifically alleged wrongdoing by a prison official. He stated that "Mary Danzy told me she is the grievance coordinator," and that "I do not think Mary Danzy should of [sic] have my grievance so this is a due process and negligence." Furthermore, when Geter responded to the defendant's motion to dismiss, he stated that Danzy completed all of his grievance paperwork, Danzy was responsible for refusing and denying his grievance, and asked the court to "see Mary Danzy did not [give] him the remedies of the grievance procedure for this plaintiff." He went on to allege that she "did all plaintiff['s] grievance[s] and plaintiff ask to see the coordinators about the grievance but officer Mary Danzy said she was the one [who] do[es] all of the coordinat[ion] [of] the grievance." Geter repeated that it was Danzy who denied his grievance. Geter alleged that he was "denie[d] the due process of the grievance" and denied "administrative remedies of the grievance." Geter claimed that "Mary Danzy Officer lie[]d about be[ing] the grievance coordinator."

Construed liberally, Geter alleged that (1) Danzy completed the grievance on his behalf, (2) Danzy represented to him that she was the grievance coordinator

who would handle his grievance, (3) Danzy was not, in fact, the grievance coordinator, (4) Danzy asked the plaintiff to hand over his papers to her for her to complete, (5) Mary Danzy negligently filled out his form, and (6) the form was rejected. These allegations are sufficient to raise the issue of unavailability of administrative remedies under *Ross*'s third category to the district court.

Beyond the allegations in his pleadings, the admittedly sparse record contains some evidence to support these allegations. [16] Geter filed with the court a grievance form which is in his handwriting but which indicates it was received by Danzy on April 27, 2016. In contrast, the form the prison submitted as part of its administrative record is in neat handwriting—and clearly not Geter's distinctive and nearly illegible handwriting—and indicates it was completed on April 28, 2016. These forms create at least the inference that someone other than Geter prepared the grievance form for him, albeit incorrectly. Moreover, at another point in this litigation, Geter filed a copy of the grievance received by the prison, on which he had written in the margin, "I did not write this. . ." Also, Geter has alleged that Danzy represented herself as the grievance coordinator; however, the prison submitted evidence that Grant was "the" grievance coordinator at Baldwin

---

[16] We hasten to clarify that we are not deciding the merits of Geter's claim here. However, we would not remand for determination on this issue if no set of facts could prove Geter's allegations meritorious.

21

during the years relevant to Geter's claim. Thus, the record could support the allegation that Geter was misled.

We conclude by noting that this case is unusual. We are reviewing a motion to dismiss. At this stage in the proceedings, therefore, our "record" is limited to pleadings and the attachments to those pleadings, and we must accept the allegations in the plaintiff's pleadings as true. *Whatley*, 898 F.3d at 1082. It may be that there is, in fact, no merit to the plaintiff's allegations, but we leave it to the district court to make those determinations in the first instance with a more developed record. Accordingly, we remand this case to the district court for it to consider Geter's allegations against Danzy under the third prong of *Ross*. *See Brown*, 212 F.3d at 1210 (remanding for a determination of unavailability to the district court because it had not been addressed); *Ross*, 136 S. Ct. at 1862 (remanding for consideration of the allegations in the complaint in light of the unavailability doctrine); *Turner*, 541 F.3d at 1086 ("In any event, we would prefer for the district court in the first instance to apply the standard to the facts it finds in this case."). We do not suggest how the district court should undertake this task except for the guidance already given in this opinion.

## IV. Conclusion

Before a prisoner may bring a § 1983 suit for prison conditions, the prisoner must exhaust his available administrative remedies. Because Geter alleged and

22

provided some evidence that he received misleading assistance in the prison grievance process, we vacate the district court's order to dismiss Geter's suit and remand for a determination in the first instance about the remedies available to Geter under the third prong of *Ross*. *See* 136 S. Ct. at 1860.

**VACATED** and **REMANDED**.