[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 19-13745

_____

DURELL SIMS,

Plaintiff-Appellee,

*versus*

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:16-cv-00049-RH-CAS

_____

Before BRANCH, GRANT, and TJOFLAT, Circuit Judges.

GRANT, Circuit Judge:

Durell Sims—a Florida prisoner—says that he deserves a religious exemption from a Florida Department of Corrections rule that beards can only be a half-inch long. The district court agreed with him, and the Secretary of the Department does not push back on that substantive ruling. Instead, the Secretary argues that the decision was procedurally improper because an inmate must file a "Petition to Initiate Rulemaking" to satisfy the Prison Litigation Reform Act's pre-suit exhaustion requirements. Sims responds that the Secretary did not preserve that issue below. We reject both parties' arguments and affirm the district court.

Beginning with preservation, Sims contended that there was a prohibition against appellate review of any matter raised at summary judgment but not renewed during trial. We disagree; more importantly, so does the Supreme Court. *See Dupree v. Younger*, 143 S. Ct. 1382, 1389 (2023); *see also Am. Builders Ins. Co. v. Southern-Owners Ins. Co.*, 71 F.4th 847, 859–60 (11th Cir. 2023). Though it was an open question when the parties argued this case, the Supreme Court has since unanimously clarified that a "purely legal issue resolved at summary judgment" is reviewable on appeal even if the losing party failed to renew its arguments at or after trial. *Dupree*, 143 S. Ct. at 1386–87.[1] And that makes sense—

---

[1] After the Supreme Court decided *Dupree*, both parties addressed the new case in supplemental letter briefs. *See Am. Builders Ins. Co.*, 71 F.4th at 860–61

nothing in the Federal Rules of Civil Procedure or the Supreme Court's precedents requires a party to ask the district court to reconsider a legal argument it already rejected. Because exhaustion under the PLRA is treated as a matter in abatement—which operates like a "purely legal issue" in *Dupree*—in this Circuit, we can review the district court's decision on that issue even though the Secretary did not renew his argument after summary judgment.

We therefore consider the Secretary's exhaustion argument—but we also disagree with it. When a state sets up a grievance procedure for its prisoners, as Florida has done, a prisoner must file a grievance and exhaust the remedies available under that procedure before he can initiate a lawsuit. But a prisoner need not do anything else. Florida's three-step grievance procedure for settling prisoner complaints does not include filing a rulemaking petition, so a Florida prisoner need not seek rulemaking before he can sue. We affirm.

## I.

As a devout Muslim, Sims believes that growing a fist-length beard is a necessary component of his religion. But that belief runs headlong into regulations governing the Florida corrections system. The Florida Department of Corrections "Grooming Policy," as the parties call it, does not leave much room for choice on facial hair: prisoners can either be "clean shaven" or "grow and

---

(refusing to consider whether an argument raised a "purely legal issue" under *Dupree* without briefing from the parties).

maintain a half-inch beard." Fla. Admin. Code r. 33-602.101(4). The policy does not allow for exceptions. *Id.*

Sims sought relief through the Department's grievance process, starting with the prison chaplain. At the first step, his informal grievance form explained that his religious beliefs required him to grow a fist-length beard, but that the Department's grooming policy prevented him from doing so. The chaplain denied the grievance, concluding that—despite Sims's own views on the subject—the prison's rules were in line with his religious beliefs. Step two was a formal grievance to the assistant warden. That was also denied, which led to step three: an appeal to the Secretary of the Florida Department of Corrections. That too was rejected.

Once Sims had completed the internal grievance process without success, he turned to the courts. He filed a pro se civil action in federal court against the Secretary of Corrections, claiming that he should be allowed to grow a fist-length beard because the grooming rule (at least as applied to him) violated the Religious Land Use and Institutionalized Persons Act. *See* 42 U.S.C. § 2000cc-1.[2] RLUIPA prohibits imposing a "substantial burden" on an incarcerated person's religious exercise unless that burden furthers a compelling government interest using the least restrictive means. *Id.* § 2000cc-1(a).

---

[2] Sims also contended that the grooming rule violated the First Amendment and that an unrelated rule—the "strip search policy"—violated both RLUIPA and the First Amendment. The district court granted summary judgment to the Secretary on each of those claims, and Sims does not appeal those rulings.

The Secretary moved to dismiss Sims's complaint, contending that he had failed to exhaust all of his administrative remedies before filing suit—a requirement under the Prison Litigation Reform Act, which governs how and when inmates can file suit to challenge prison conditions. *See* 42 U.S.C. § 1997e(a). The Secretary conceded that Sims had complied with the three steps of the prison's grievance process, but argued that more was required. The Florida Administrative Procedure Act provides that any "person regulated by an agency or having substantial interest in an agency rule may petition an agency to adopt, amend, or repeal a rule." Fla. Stat. § 120.54(7)(a). Pointing to this provision, the Secretary contended that Sims could have—and should have—asked the Department to "amend" its grooming rule before he turned to the judicial system.

The district court denied the Secretary's motion to dismiss, concluding that the PLRA only requires that prisoners exhaust internal prison grievance procedures. Filing a petition for rulemaking, it reasoned, is not part of that process. And in any event, the court went on, a rulemaking petition is not classified as an available remedy under the PLRA because the Department does not inform prisoners that filing one is a required step.

Undeterred, the Secretary raised the exhaustion defense again at summary judgment. The district court rejected the argument for the second time—relying principally on its earlier decision—and Sims's case went to trial.

After a full bench trial on the merits, the district court ruled for Sims. The court explained that the "whole point of RLUIPA is

to require accommodation of religion—to allow an inmate an exception to an otherwise-uniform policy that substantially burdens the inmate's religious exercise." The Department's grooming policy, the court said, substantially burdened Sims's sincere religious exercise, but the Secretary did not show that its half-inch beard policy was the least restrictive means of furthering a compelling government interest. To remedy the harm, the court ordered the Secretary to grant Sims an exception to the grooming rule, allowing him to grow a fist-length beard in accordance with his religious beliefs.

Rather than filing any post-trial motions challenging the verdict, the Secretary appealed. He does not challenge the district court's decision that Sims has a right under RLUIPA to grow a fist-length beard; instead, the only question he raises is whether Sims exhausted the available administrative remedies as required by the PLRA. Sims, for his part, says the Secretary cannot bring his exhaustion argument here because it was not properly preserved at or after trial.

## II.

"We review a district court's interpretation of the PLRA's exhaustion requirement de novo." *Whatley v. Smith*, 898 F.3d 1072, 1082 (11th Cir. 2018).

## III.

Before we can consider the Secretary's exhaustion argument, we need to decide whether it was preserved for appeal. Sims argued for a blanket rule against appellate review of any matter raised at summary judgment and not renewed in the district

court before appeal. The primary authority that he cited for this preservation requirement, *Ortiz v. Jordan*, stated broadly that a party could not "appeal an order denying summary judgment after a full trial on the merits." 562 U.S. 180, 183–84 (2011). But the *Ortiz* court specifically declined to address whether this rule applied to "purely legal" questions. *See id*. at 190.

The Supreme Court recently clarified in *Dupree v. Younger* that *Ortiz* was more limited than Sims suggests: it held that "a party must raise a sufficiency-of-the-evidence claim in a post-trial motion to preserve it for appeal." *Dupree*, 143 S. Ct. at 1389 (citing *Ortiz*, 562 U.S. at 191–92). And the *Dupree* Court went on to explain that "pure questions of law" are exempt from the preservation rule announced in *Ortiz*. *Id*. The reason? Pure questions of law are "unaffected by future developments in the case." *Id*. Because changes in the evidentiary landscape of a case do not affect the resolution of a purely legal question, there is no good reason to require a party to renew a rejected legal argument during or after trial. "From the reviewing court's perspective, there is no benefit to having a district court reexamine a purely legal issue after trial, because nothing at trial will have given the district court any reason to question its prior analysis." *Id*.

The same is true of PLRA exhaustion. As we have explained, PLRA exhaustion "is nothing more than a precondition to an adjudication on the merits," one that the district court generally can (and should) resolve at the motion-to-dismiss stage. *Bryant v. Rich*, 530 F.3d 1368, 1374–75 (11th Cir. 2008) (describing

exhaustion as a "matter in abatement").[3]    When ruling on exhaustion, a judge can properly "resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record."  *Id.* at 1376 (footnote omitted).  So by the time of a trial on the merits, no disputed facts related to exhaustion remain—a district court will have already decided the issue.[4]  *See id.* at 1374–76, 1376 n.15.

*Dupree*'s logic applies here whether or not PLRA exhaustion is termed a pure question of law.  A judge usually resolves any factual disputes related to exhaustion before a party moves for summary judgment—and always before a prisoner's case can move on to trial on the merits.  *See id.*; *see also Turner v. Burnside*, 541 F.3d 1077, 1082–83 (11th Cir. 2008).  *Dupree* makes clear that no action

---

[3] Some dismissals for PLRA exhaustion are possible even before a party moves to dismiss.  *See, e.g.*, *Wells v. Brown*, 58 F.4th 1347, 1351–52 (11th Cir. 2023) (en banc).  And while exhaustion is "not ordinarily the proper subject for a summary judgment" owing to its separation from the merits, it can be decided there.  *Bryant*, 530 F.3d at 1374–75.  But if it is, it should be treated as if the argument was "raised in a motion to dismiss."  *Id.* at 1375 (quotation omitted); *see also Turner v. Burnside*, 541 F.3d 1077, 1082–83 (11th Cir. 2008) (explaining the process for deciding a motion to dismiss for lack of exhaustion).

[4] We could imagine a scenario where the inadvertent disclosure of new information at trial could change a district court's pretrial exhaustion analysis.  But exhaustion is "an affirmative defense the defendant must plead and prove."  *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007).  In that scenario, the defendant bears the burden of alerting the district court to the changed facts and the need for reconsideration.  Because the defendant necessarily would have made this argument at trial, the issue would have been raised there—and thus preserved for appeal in any event.

at or after trial is required to preserve a purely legal issue last addressed at summary judgment for appellate review. So too here. We can review a district court's PLRA exhaustion decision even if a party fails to raise it after the summary judgment phase of a case.

**IV.**

Though the Secretary's exhaustion argument is preserved, it will not win the day. Under the PLRA, prisoners must exhaust "such administrative remedies as are available" before filing suit in federal court. 42 U.S.C. § 1997e(a). To do that, a prisoner must "complete the administrative review process in accordance with the applicable procedural rules." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). And what are the "applicable procedural rules"? Those requirements are defined by the prison grievance process itself, not by the PLRA. *Id.* So we look to the requirements of the applicable prison grievance system to determine the boundaries of proper exhaustion. *See Dimanche v. Brown*, 783 F.3d 1204, 1210 (11th Cir. 2015); *see also Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).

Florida's "Inmate Grievance Procedure" (contained in Chapter 33-103 of the Florida Administrative Code) sets out steps for "the administrative settlement" of prisoner complaints. Fla. Admin. Code r. 33-103.001(1). Prisoners can file complaints regarding, among other matters, the "substance, interpretation, and application of rules and procedures" that affect them personally. Fla. Admin. Code r. 33-103.001(4)(a). To complete the process outlined in that regulation, a prisoner must first file an informal grievance with a designated prison staff member. *See* Fla.

Admin. Code r. 33-103.005.  If that fails, the prisoner files a formal grievance with the institution's warden or assistant warden.  Fla. Admin. Code r. 33-103.006(1)(a).  An unsuccessful formal grievance is followed by an appeal to the Secretary.  Fla. Admin. Code r. 33-103.007(1); *see also Dimanche*, 783 F.3d at 1211.

What the procedures do not mention is a Petition to Initiate Rulemaking.  Nor do they reference the Florida Administrative Procedure Act, where the Petition to Initiate Rulemaking process is found.  Indeed, nothing in Chapter 33-103 suggests that an inmate must take any steps other than the ones outlined above.  Quite the opposite: Chapter 33-103 states that if a prison fails to timely respond to a prisoner's informal grievance, formal grievance, and appeal, the prisoner is "entitled to proceed with judicial remedies as he would have exhausted his administrative remedies."  Fla. Admin. Code r. 33-103.011(4).

The Department's "Inmate Orientation Handbook" tells the same story.  When inmates enter the custody of the Department, they are given this handbook to help them understand the general rules, procedures, and requirements of prison life.  *See* Fla. Dep't of Corr., *Inmate Orientation Handbook* 2 (2018).  It states that Chapter 33-103 contains the procedures for filing a grievance and resolving a complaint. *Id*. at 18.  Nothing in the handbook suggests that a prisoner must do anything beyond the three steps in Chapter 33-103 to exhaust administrative remedies.  We take the Florida regulations and inmate handbook at their word—prisoners need not file a rulemaking petition to be entitled to proceed with judicial remedies.

In short, Florida's grievance procedures do not require that a prisoner file a Petition to Initiate Rulemaking. Florida's process instead requires just three things: an informal grievance, a formal grievance, and an appeal to the Secretary. The Secretary does not dispute that Sims adequately completed each of those three steps. Sims, then, was free to file this lawsuit.

**AFFIRMED.**