[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-11081

_____

TERRI MCGUIRE-MOLLICA,

Plaintiff-Appellant,

*versus*

THE FEDERAL BUREAU OF PRISONS, et al.,

Defendants,

RICHARD GRIFFIN,
XINYU LI,
SHARON BAILEY,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 7:20-cv-01768-SGC

_____

Before WILLIAM PRYOR, Chief Judge, and LUCK and BRASHER, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to decide whether a prisoner failed to exhaust her administrative remedies to request surgery for a medical condition before she sued prison officials. *See* 42 U.S.C. § 1997e(a). Terri McGuire-Mollica, a federal prisoner, was diagnosed as suffering pain from a uterine fibroid. Although two outside doctors recommended that the fibroid be removed, prison officials denied McGuire-Mollica's requests for surgery. McGuire-Mollica then filed a prison grievance. After officials denied her grievance and her initial appeal, McGuire-Mollica mailed the required BP-11 form for an appeal to the general counsel of the Bureau of Prisons. *See* 28 C.F.R. § 542.15(a). But prison officials say they neither received nor filed it. When McGuire-Mollica filed a complaint in the district court alleging that prison staff violated her right to be free from cruel and unusual punishment, *see* U.S. CONST. amend. VIII, the district court dismissed it for failure to exhaust administrative remedies. We vacate and remand.

# I. BACKGROUND

In September 2016, Terri McGuire-Mollica was transferred to the Federal Correctional Institution at Aliceville. One month later, a prison physician, Dr. Richard Griffin, diagnosed her as having a noninflammatory disorder of the uterus, abnormal uterine and vaginal bleeding, and iron deficiency anemia. McGuire-Mollica then had a fibroid measuring six centimeters long that, she alleges, "could have been removed laparoscopically, with minimal invasiveness." In the ensuing years, Dr. Griffin, Dr. Xinyu Li, and Nurse Sharon Bailey denied her requests for treatment, including medication and surgery to remove the fibroid. Their refusal to perform surgery on her persisted even after two outside physicians recommended that treatment. McGuire-Mollica's fibroid now measures 21 centimeters long and weighs close to 20 pounds. Surgery would require the removal of "her entire uterus . . . and possibly other organs."

When filing a grievance with the Bureau of Prisons, "[a] plaintiff must follow a four-step process to exhaust h[er] administrative remedies." *Shivers v. United States*, 1 F.4th 924, 935 (11th Cir. 2021). First, a prisoner "shall" attempt to "informally" resolve her complaint with prison staff. 28 C.F.R. § 542.13(a). Second, she "shall" submit a "formal written Administrative Remedy Request" on a BP-9 form within "20 calendar days following the date on which the basis for the Request occurred." *Id.* § 542.14. Third, she "may submit an Appeal" on a BP-10 form "to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response." *Id.* § 542.15(a). Fourth, she "may submit an

Appeal" on a BP-11 form "to the General Counsel within 30 calendar days of the date the Regional Director signed the response." *Id.*

The regulations also outline the deadlines for prison officials to respond at each step. "If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received." *Id.* § 542.18. "Once filed, response shall be made by the Warden . . . within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days." *Id.* "If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by" 20 or 30 days depending on the level—but "[s]taff shall inform the inmate of this extension in writing." *Id.* And "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." *Id.*

On October 31, 2019, McGuire-Mollica filed an informal resolution form with the prison. She requested to "see a specialist/surgeon to determine the best course of action, within the next 30 days." The next day, prison officials returned her form as unresolved.

On December 4, 2019, McGuire-Mollica submitted a request for administrative remedy using a BP-9 form. She explained that she "ha[d] not received any treatment or additional consults for this problem" and renewed her request for "an outside specialist or surgeon." On June 23, 2020, the acting warden responded to her

request by confirming that she had a "scheduled appointment with an OB/GYN specialist."

On June 26, 2020, McGuire-Mollica filed an appeal using a BP-10 form. She continued to demand to see a surgeon. On December 21, 2020, the regional director denied her request because there was "no evidence of a May 2017 diagnosis of a malignant uterine growth" in her medical records and "[s]urgical intervention was not recommended."

On October 1, 2020, McGuire-Mollica mailed an appeal using a BP-11 form. McGuire-Mollica mailed this appeal before receiving the regional director's response to her BP-10 form, but the regional director's time to respond had already expired, which allowed the prisoner to "consider the absence of a response to be a denial." *Id.* She signed the BP-11 form and listed a certified mail tracking number on it. But prison officials contend that they never received the form, as the SENTRY database that tracks the status of all administrative grievances has no record of the BP-11 form being filed.

On October 27, 2020, 26 days after she submitted the BP-11 form, McGuire-Mollica filed *pro se* a complaint in the district court. She alleged that the Bureau of Prisons and its officials had violated her rights under the Federal Tort Claims Act and the Eighth Amendment. And she attached exhibits to substantiate her claims, including copies of her administrative grievance filings and an affidavit alleging that "the officers/staff at this prison ha[ve] been tampering with [her] legal mail and denying [her] access to the Courts."

On June 3, 2022, a magistrate judge recommended dismissal of McGuire-Mollica's claims under the Federal Tort Claims Act. But she also recommended that McGuire-Mollica be allowed to amend her complaint to "set forth specific factual allegations against the individual physicians and/or medical staff relating *only* to her claim[s] of deliberate indifference to medical needs" under the Eighth Amendment. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). The district court adopted the magistrate judge's report and recommendation.

On July 1, 2022, McGuire-Mollica filed—still *pro se*—an amended complaint. She listed several prison staff and officials as defendants and described their involvement in the denial of her request. The magistrate judge recommended dismissal of the complaint against all the prison officials except for Dr. Griffin, Dr. Li, and Nurse Bailey. The district court adopted this report and recommendation. The parties later consented to the magistrate judge adjudicating the case.

On October 19, 2023, the prison staff moved to dismiss the amended complaint. They contended that McGuire-Mollica failed to exhaust her administrative remedies. *See* 42 U.S.C. § 1997e(a). They argued that she did not complete the final step of the process of "appeal[ing] the response from the Regional Office to the General Counsel level." McGuire-Mollica responded that she filed the BP-11 form when she submitted it to prison officials for mailing. And she explained that she "ha[d] done all administrative remedies that were available to her" because she could not "control the mail,

whether the [Bureau]'s employees actually process or respond to the form, or even when or if the remedy is logged into the [Bureau] system."

On March 8, 2024, the magistrate judge granted the motion to dismiss. She explained that "[g]iven the clear conflict between the parties' allegations, the court must accept as true McGuire-Mollica's version of events—that she mailed her final appeal to the General Counsel." But, under *Shivers v. United States*, 1 F.4th 924, she "conclude[d] that although McGuire-Mollica properly completed and mailed her final appeal, it was never 'logged into the Administrative Remedy Index as received'" and "[b]ecause her appeal was never received and logged into the Administrative Remedy Index, it was never considered 'filed.'" She also dismissed the amended complaint because "when McGuire-Mollica filed her [original] complaint, the General Counsel's time to respond had not expired" such that "the administrative remedy process had not been completed." *See* 28 C.F.R. § 542.18. After McGuire-Mollica filed this appeal, she appeared through counsel.

## II. STANDARDS OF REVIEW

We review a dismissal for failure to exhaust administrative remedies *de novo*. *Shivers*, 1 F.4th at 936 n.9. But "we review the district court's findings of fact related to exhaustion for clear error." *Id.*

## III. DISCUSSION

The Prison Litigation Reform Act requires prisoners to exhaust all available administrative remedies before suing in a district

court. *See* 42 U.S.C. § 1997e(a). Under the Act, "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). So "a prisoner must 'complete the administrative review process in accordance with the applicable procedural rules.'" *Sims v. Sec'y, Fla. Dep't of Corr.*, 75 F.4th 1224, 1230 (11th Cir. 2023) (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007)). "[W]e look to the requirements of the applicable prison grievance system to determine the boundaries of proper exhaustion." *Id.*

"[D]eciding a motion to dismiss for failure to exhaust administrative remedies [involves] a two-step process." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). First, the district court reviews "the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." *Id.* "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.* Second, "[i]f the complaint is not subject to dismissal at the first step," the district court then "make[s] specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* After the district court "makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted h[er] available administrative remedies." *Id.* at 1083. Throughout this process, "[t]he defendants bear the burden of proving that the plaintiff has failed to exhaust h[er] available administrative remedies." *Id.* at 1082.

The district court dismissed McGuire-Mollica's amended complaint for two reasons. It ruled that McGuire-Mollica failed to exhaust her administrative remedies because her BP-11 form was never filed in the SENTRY database. It also ruled that McGuire-Mollica failed to exhaust because the general counsel's time to respond to her appeal had not expired when she filed her original complaint.

The district court erred on each ground. A prisoner is not responsible for prison officials' failure to complete their administrative duties under the governing procedures. And an administrative remedy is unavailable when it imposes a requirement that is unknowable due to the opaqueness of the procedures.

The district court first held that McGuire-Mollica had to suffer for the administrative breakdown that occurred here. McGuire-Mollica contends that "[o]nce a prisoner does what [s]he is required to do, [s]he has exhausted available administrative remedies, even if prison officials do not process h[er] properly filed request." The prison staff respond that McGuire-Mollica's claims were "properly dismissed without prejudice because her BP-11 [form] was never filed."

In *Shivers*, we affirmed the dismissal of a prisoner's appeal for failure to exhaust because "the district court's finding that he failed to file his BP-11 form was [not] clearly erroneous." 1 F.4th at 936. Although the parties agreed that the prisoner "properly completed the first three steps of the process," they disagreed about whether he properly filed the BP-11 form. *Id.* at 927. To rebut the

prisoner's assertion that he had properly submitted the BP-11 form, "[t]he government attached a copy of the Bureau['s] . . . SENTRY Administrative Remedy Generalized Retrieval database showing that the Central Office never received [the prisoner]'s BP-11 form." *Id.* We held that "substantial evidence support[ed] the district court's finding" that the prisoner "failed to file his BP-11 form." *Id.* at 936. We explained that "[b]ecause an appeal 'is considered filed on the date it is logged into the Administrative Remedy Index as received,' the district court could rely on the declaration and exhibit" from the government. *Id.* (quoting 28 C.F.R. § 542.18). And we stated that because "the BP-11 form attached to [the prisoner]'s declaration, which he declared was a 'true and correct copy' of the form he submitted, was unsigned . . . , the district court correctly concluded that [the prisoner]'s unsigned form would not have been acceptable even if it had been received." *Id.*

This appeal differs from *Shivers* in two material ways. First, in *Shivers*, the district court made no finding that the prisoner properly submitted his BP-11 form. *Id.* Here, in contrast, the district court found that "McGuire-Mollica properly . . . mailed her final appeal." Second, in *Shivers*, the prisoner's BP-11 form "would not have been acceptable even if it had been received" because it was "unsigned." *Id.* But here the district court found that "McGuire-Mollica properly completed . . . her final appeal." So the district court was wrong to read *Shivers* as controlling the outcome.

Because "we look to the requirements of the applicable prison grievance system to determine the boundaries of proper

exhaustion," *Sims*, 75 F.4th at 1230, the federal regulations for prison grievances govern this inquiry, *see* 28 C.F.R. §§ 542.10–19. Those regulations clearly divide responsibilities between prisoners and prison officials in the administrative process. Regulation 542.15(a) requires prisoners to "submit an Appeal on the appropriate form (BP-11) to the General Counsel." *Id.* § 542.15(a). Regulation 542.18 then dictates that, "[i]f accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received" and, "[o]nce filed, response shall be made . . . by the General Counsel within 40 calendar days." *Id.* § 542.18. Importantly, regulation 542.18 imposes duties on prison officials, not prisoners. *See id.* Prisoners cannot be tasked with "logg[ing]" the BP-11 form "into the Administrative Remedy Index as received" because they are the senders, not the "receive[rs]." *Id.* McGuire-Mollica's only duty was to "submit" the form, *id.* § 542.15(a), which she satisfied when she "properly completed and mailed" it.

The Prison Litigation Reform Act "does not require inmates to craft new procedures when prison officials demonstrate . . . that they will refuse to abide by the established ones." *Turner*, 541 F.3d at 1083. Nor does it require them "to resubmit the same grievance to the same official . . . when it was properly filed as a matter of right." *Id.* And because "[c]ompliance with prison grievance procedures . . . is all that is required by the [Act] to 'properly exhaust,'" a court cannot create a requirement for exhaustion that is not found in the administrative procedures for the prison. *Jones*, 549 U.S. at 218.

The federal regulations comport with this understanding. They require prison officials to "[e]stablish procedures for receiving, recording, reviewing, investigating, and responding to . . . Appeals" and "[r]espond[ing] to and sign[ing] all . . . Appeals filed at their levels." 28 C.F.R. § 542.11(a). Prisoners, in contrast, only "have the responsibility to use this Program in good faith and in an honest and straightforward manner." *Id.* § 542.11(b). Because McGuire-Mollica followed the instructions to properly submit her BP-11 form, the district court was wrong to dismiss her amended complaint on the ground that the form was never filed.

When presented with similar facts, our sister circuit agreed that prisoners who follow instructions are not responsible for the failures of prison officials to process a grievance. In *Dole v. Chandler*, the Seventh Circuit reversed a dismissal for failure to exhaust where the prisoner submitted his grievance for mailing but officials later lost and never processed it. 438 F.3d 804, 807–08, 813 (7th Cir. 2006). It explained that "[b]ecause [the prisoner] properly followed procedure and prison officials were responsible for the mishandling of his grievance, it cannot be said that [he] failed to exhaust his remedies." *Id.* at 811. And it ruled that "prison authorities may not employ their own mistake to shield them from possible liability, relying upon the likelihood that a prisoner will not know what to do when a timely appeal is never received." *Id.* We have endorsed and applied *Dole* in this Circuit. *See Turner*, 541 F.3d at 1083 (quoting *Dole*, 438 F.3d at 811). In a similar way, McGuire-Mollica cannot be responsible for prison officials' failure to file her BP-11 form.

The district court also ruled that McGuire-Mollica prematurely filed her complaint. McGuire-Mollica filed her suit on October 27, 2020, 26 days after she submitted her BP-11 form. McGuire-Mollica contends that she did not need to wait until the end of the 40-day period for the general counsel to respond because her appeal was never "filed" as required to start the running of that period. 28 C.F.R. § 542.18. The prison staff respond that we have rejected a futility exception to the Prison Litigation Reform Act.

Under the Prison Litigation Reform Act, "[a]n inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016). This rule is a "textual exception to mandatory exhaustion" because the Act's "exhaustion requirement hinges on the 'availab[ility]' of administrative remedies." *Id.* (alteration in original) (quoting 42 U.S.C. § 1997e(a)). The issue here is whether a remedy was available for McGuire-Mollica to exhaust.

The Supreme Court has described "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Third, an administrative procedure is unavailable "when prison administrators thwart inmates from

taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

Under the second *Ross* exception for opacity, McGuire-Mollica did not have to wait longer to file her complaint. The time for the general counsel to review an appeal begins only when it is "filed," and only prison officials can "log[]" a BP-11 form "into the Administrative Remedy Index as received." 28 C.F.R. § 542.18. The regulations provide no instructions for how a prisoner should proceed if prison officials fail to file her properly submitted BP-11 form. *See id.* Without any guidance about what to do in that situation, McGuire-Mollica could not "make sense of what [this step] demand[ed]." *Ross*, 578 U.S. at 644. So this ambiguity made the "administrative scheme . . . so opaque that it bec[a]me[], practically speaking, incapable of use." *Id.* at 643. As we have made clear, prison officials cannot "play hide-and-seek with administrative remedies" because "[t]hat which is unknown and unknowable is unavailable." *Goebert v. Lee County*, 510 F.3d 1312, 1323 (11th Cir. 2007).

When presented with similar facts, our sister circuit agreed that *Ross*'s opacity exception applies where the administrative procedures did not explain how to proceed if prison officials failed to file a prisoner's grievance. In *Williams v. Correction Officer Priatno*, the Second Circuit reversed a dismissal for failure to exhaust where "the correction officer never filed [the prisoner's] grievance" and "the regulations g[a]ve no guidance whatsoever to an inmate whose grievance was never filed." 829 F.3d 118, 124, 126–27 (2d

Cir. 2016). The court explained that "the regulations only contemplate appeals of grievances that were actually filed" because, "[f]or example, if the grievance had never been filed, . . . the timeline for [a prison official] to provide a response within 25 days 'of receipt of the grievance' would never have been triggered." *Id.* at 124 (citation omitted). And it concluded that without any instructions "for appealing a grievance that was never filed[,] . . . the process to appeal an unfiled and unanswered grievance [was] prohibitively opaque, such that no inmate could actually make use of it." *Id.* at 126. So too for McGuire-Mollica's appeal where prison officials never filed her BP-11 form after she properly submitted it.

We reject the prison staff's objection that McGuire-Mollica forfeited reliance on this exception. In her complaint, McGuire-Mollica recounted *Ross*'s unavailability exceptions when arguing that she was "only required to use the processes made available to her by the [Bureau]." And in her response to the motion to dismiss, McGuire-Mollica argued that she had "done all administrative remedies that were available to her," that "[n]o place within the administrative remedy guidelines" stated that a prisoner "must wait on a response from one level before proceeding to the next level," and that she could not "control . . . when or if the remedy is logged into the [SENTRY] system." Because McGuire-Mollica proceeded *pro se* in the district court, we liberally construe these filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Even though she did not use the word "unavailable," McGuire-Mollica's "theory has consistently been that" she did everything available to and required of her to exhaust. *VFS Leasing Co. v. Markel Ins.*, 120 F.4th 745, 750 (11th Cir.

2024). Based on this theory along with her contention that "[n]o place within the administrative remedy guidelines" mentioned waiting for a response before proceeding to the next step of the appeal process, McGuire-Mollica's *pro se* filings sufficiently preserved reliance on the opacity exception. Moreover, the prison staff waited until their reply to McGuire-Mollica's response to the motion to dismiss to argue that the regulations required her to wait longer before filing suit. Based on that procedural context, we cannot fault her failure to provide a more specific reference to the opacity exception in the district court.

## IV. CONCLUSION

We **VACATE** and **REMAND** for further proceedings consistent with this opinion.